Celso **SALINAS, Jr.**, et al., Plaintiffs,

v.

**AMALGAMATED SUGAR COMPANY, Inc., Defendant.**

**Civ. No. 1–70–108.**

United States District Court,
D. Idaho.

May 2, 1972.

312

———————

Smith & McDonald, Nampa, Idaho, Western Idaho Legal Aid, Caldwell, Idaho, for plaintiffs.

Earl E. Reed, Nampa, Idaho, Allan M. Lipman, Jr., Ogden, Utah, Ray, Quinney & Nebeker, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION

McNICHOLS, Chief Judge.

This case came on for trial before the Court sitting without a jury. Oral and documentary evidence was taken and time allotted for post trial briefing. The matter stands submitted on the merits.

The evidence discloses that the plaintiffs are what are known as migrant workers who reside in the State of Texas but travel in groups to various areas of the United States to perform labor in agricultural production. Plaintiffs Celso Salinas, Jr. and Anita Salinas are husband and wife; plaintiff Eulogio Arvica is a married man, whose wife, although involved, is not a party.

Defendant, Amalgamated Sugar Company, Incorporated (hereinafter "Amalgamated"), is a corporation engaged in the refining of sugar from sugar beets grown in Idaho and Utah.

The complaint is comprised of two claimed causes of action; the first being based on allegations of violation by the defendant of the Farm Labor Contractor Registration Act (hereinafter the "Act") (7 U.S.C.A. § 2041 et seq.) and the regulations of the Secretary of Labor adopted pursuant to the Act (29 C.F.R. § 40.1, et seq.); and the second count alleges violations by the defendant of the *Rules and Regulations Relating to Migratory Labor Housing* as promulgated by the Idaho State Board of Health under the authority of Idaho Code § 39–106 et seq.

Jurisdiction of the Court is alleged to be conferred by 28 U.S.C. § 1337 (Act of Congress regulating Commerce), coupled with the doctrine of pendente jurisdiction. Defendant denies that the Court has jurisdiction of the subject matter contending that the Act is a regulatory Act to be supervised by the Secretary of Labor and extends no private right of action to any individual. On this ground the defendant filed an early motion to dismiss.

The intent of the Act as therein enunciated is to control the exploitation of migrant agricultural workers by irresponsible labor contractors. The terms of the Act require fair dealing by the contractor with the migrant workers. Registration of labor contractors is required, certain conduct is denounced and certain affirmative acts required. Penalties by way of fines and cancellation of license are authorized. Obviously the Secretary of Labor is expected initially to administer the law.

In response to the aforesaid motion to dismiss, plaintiffs urged that, in addition to the express enforcement provisions of the Act, there exists an implied private remedy available to the individuals for whose benefit the law was intended. Both sides agreed that the question was one of first impression in this Circuit. The Court denied the motion to dismiss and held (in a separate Memorandum Order) that the Court had jurisdiction. This holding was grounded on the authority of Gomez v. Florida State Employment Service, 417 F.2d 569 (5th Cir. 1969). An opportunity for interlocutory appeal, as permitted by 28 U.S.C. § 1292(b) was afforded but defendant did not pursue such a course. The prior holding of this Court is reaffirmed.

The evidence in the case discloses that Amalgamated annually contracts for the growing of sugar beets with beet growers located in the State of Idaho. Price and acreage allotment limitations are agreed upon in advance of the growing season. The care of the beet crop during the growing period requires a considerable amount of field labor. For some years Amalgamated has followed a practice of arranging on behalf of its contract growers for the recruitment of sufficient field hands to perform this task. Each grower advises early in the year as to the contemplated number of workers needed and Amalgamated sends a representative to Texas to secure commitments for the total migrant labor force required for the season's work for all of the contract growers. It is necessary that housing be available for the migrant workers. Such workers are

brought to Idaho for agricultural field work on many crops other than sugar beets. Certain organizations have heretofore established so-called labor camps scattered over southwestern Idaho, the area herein involved. An exhibit before the Court indicates eleven such camps in the area with a total of some eight hundred housing units of various sizes. Amalgamated neither owned, controlled nor in any way operated any of these labor camps.

Amalgamated did in 1970, as it had in prior years, contact the labor camp management to obtain information as to space availability, and to reserve certain space for the beet workers. Amalgamated further in 1970 as in prior years, obtained a State Health Department certificate certifying that the camp involved met the sanitation and health requirements. Armed with this information, Amalgamated employees went to Texas in early 1970 and contacted a labor contractor named Raul Salinas (Raul Salinas apparently is a cousin of the plaintiff Celso Salinas). Raul Salinas had for many years recruited labor for Amalgamated for work at Parma, Idaho with living quarters provided for the workers at the Parma Camp. This early 1970 meeting was a preliminary conference to advise Salinas of the probable needs and probable supply of workers. Since Raul Salinas had been to the Parma Camp many times, there was no discussion of the quality of housing. In April, 1970, Carlos Martinez, representing Amalgamated, again contacted Raul Salinas in Texas and advised that there was insufficient work near the Parma Camp but that the people to be recruited by Salinas could be employed near the Marsing, Idaho Labor Camp. Salinas reported back that his crews would go to Marsing and it was so arranged. Amalgamated had checked the Marsing Camp and had been advised that space was available. A State Department Health certificate for the Marsing Camp was issued.

It appears without contradiction that family heads or crew leaders act as agents for a family or a crew. In the instant case the plaintiffs Celso Salinas, Jr. and his wife, Anita Salinas, were signed up for work at Marsing, Idaho, by Celso's father as family head; plaintiff Eulogio Arciva was apparently signed up by Raul Salinas as crew leader. None of the plaintiffs ever talked to an Amalgamated employee. It should be noted that Celso Salinas, Jr. and Eulogio Arciva had previously worked near Parma and lived in the Parma Camp though neither had ever been at the Marsing Camp. Anita had never before been to Idaho. It is some thirty miles between the Parma and Marsing Camps.

On May 8, 1970, Celso Salinas and his wife arrived at the Marsing Camp. They advised a man who appeared to be the manager as to their assignment. He told them that all of the masonry block units (apparently the newest and best housing) had been reserved for others and offered them a room in a wooden barracks-like building. The room was small and dirty; it contained bunk beds without mattresses, a wood stove and a refrigerator. Mr. and Mrs. Salinas determined not to occupy the room and went instead to Parma to await the arrival of Raul Salinas. Plaintiff Arciva, traveling with his wife and child, initially went directly to Parma and stayed with friends until he could confer with Raul Salinas.

Apparently Raul arrived the next day, heard of the complaint about the Marsing Camp and went with plaintiffs to Marsing. He agreed that the Marsing quarters offered were unacceptable. No better housing was available so Raul took plaintiffs back to Parma arranging that they would live at Parma but work near Marsing.

Arciva, with his wife and child, were assigned a masonry block unit at Parma similar to what he had lived in at the Parma Camp each of the prior years. The Salinas' were given a 6 x 10' room in a wooden building. The room contained a sink, cold running water, an oil stove, and a bed. The oral description

made a part of the testimony bulwarked by photos of the area indicate that the building and surrounding area was disgracefully squalid.

The plaintiffs continued to live at the Parma Camp, commuting to Marsing in a truck furnished by Raul Salinas. It does not appear that Raul made a charge for this transportation. As a result of the travel factor, plaintiffs regularly arrived back at Parma later than the other workers and frequently found that the hot water of the showers had been temporarily exhausted. Over-use of toilet facilities caused severe sanitation problems. The camp facilities as a whole presented a decidedly unwholesome living condition.

Plaintiffs were without funds or means to leave the Idaho work area. Each testified, without contradiction, that he would not have come to Idaho had he known of the living conditions to be furnished. Celso and his wife could have gone to work in the midwest and Eulogio had other employment he could have taken in California.

Plaintiffs seek to recover for the rentals and costs paid to live and for the suffering and humiliation caused by being required to live under the degrading conditions described. From a standpoint of sanitation, aesthetic appearance and comfort, I am satisfied that the Parma Camp and the housing and furniture supplied to the plaintiffs were not fit for human habitation. A company of the standing of Amalgamated ought to be ashamed to be connected in any manner, however slight, with the treatment afforded the migrant workers brought into this State to aid in the agricultural industry.

Be that as it may this is a lawsuit, and not an exercise in social betterment.

As indicated, plaintiffs' first cause of action is based on alleged violations by the defendant of three specific provisions of the Act. Defendant denies initially that it is a "farm labor contractor" as defined in the Act and therefore not subject to the provisions thereof.

Evidence shows that, beginning in 1965, Amalgamated commenced a dialogue with the United States Department of Labor to clarify its position under the Act. Amalgamated sought to avoid the registration provisions of the Act contending that it was not a farm labor contractor. The Department of Labor was of the view that the sugar company was required to so register as a farm labor contractor. The upshot of the dispute was for Amalgamated to refuse to register. Sometime thereafter the Department determined not to require "sugar companies and canning companies, nor non-profit farm labor associations, run either by processors or by growers, register under the Farm Labor Contractor Registration Act". Defendant contends that this action by the administrative agency proves that it is not amenable to the Act.

A farm labor contractor is defined in 7 U.S.C. § 2042(b) insofar as pertinent as follows:

" . . .

"(b) The term 'farm labor contractor' means any person, who, for a fee, either for himself or on behalf of another person, recruits, solicits, hires, furnishes, or transports ten or more migrant workers (excluding members of his immediate family) at any one time in any calendar year for interstate agricultural employment. Such term shall not include (1) any nonprofit charitable organization, public or nonprofit private educational institution, or similar organization; (2) any farmer, processor, canner, ginner, packing shed operator, or nurseryman who engages in any such activity for the purpose of supplying migrant workers solely for his own operation; (3) any full-time or regular employee of any entity referred to in (1) or (2) above; . . ."

■ No prior judicial determination interpreting this legislation has been uncovered. It is clear, as plaintiffs claim, that Amalgamated obtains a benefit which can be equated with a "fee" from its efforts to obtain migrant workers. However, any literal reading of the statutory definition in light of the facts herein disclosed cannot help but raise a

serious legal question as to whether or not Amalgamated was or is a "farm labor contractor" as contemplated by Congress when this regulatory legislation was passed. I conclude that the sugar company is not a labor contractor within the meaning of the law. It appears to me that the persons meant to be controlled were those such as Raul Salinas who have opportunity for and exercise the personal contact with the workers which the statute seems to contemplate. The evidence discloses that Amalgamated does not make the contacts recited in the statute, but in fact approaches farm labor contractors like Raul Salinas who thereupon recruit, hire and transport the migrant workers. I am bulwarked in my interpretation of the statutory scheme by the determination of the Department of Labor, absolving sugar processing companies from the requirement of registration while requiring so-called "private farm labor employment agencies" to continue to register under the Act.

Since I conclude that Amalgamated is not a farm labor contractor under the Act, it follows that plaintiffs' first cause of action based on the violation of the Act must fail.

■ The second cause of action, allegedly founded on violations of the regulations of the Idaho State Board of Health, is not supported by the evidence. Defendant Amalgamated had no control or operation of any camp. There is no showing therefore of any violation by Amalgamated of the State Board regulations.

The foregoing determinations make it unnecessary to find or conclude on the damage question, although the Court fully heard the evidence on that issue. Therefore, and in the event it be determined that the Court is in error in holding that Amalgamated is not a farm labor contractor and thus not bound by the Act, I propose to deal with the damage claims.

By their complaint, plaintiffs alleged violation of three portions of the Act, to-wit: Sec. 2044(b) (2) and (3) and Sec. 2045(b).

Section 2044(b) (2) of the Act prohibits the giving of false or misleading information to a migrant worker concerning the terms and conditions of the agricultural employment. Plaintiffs were unable to obtain an expected witness as to this element of the complaint and have conceded that proof is absent.

■ Section 2044(b) (3) makes it a violation where the labor contractor has failed, without justification, to comply with the terms of any working arrangement made with the migrant worker. According to the evidence, defendant secured from the labor camp management a descriptive list of the housing available and a health certificate. When plaintiffs Mr. and Mrs. Salinas arrived at the labor camp, the better quality cement block housing had been already assigned to other workers and only some wholly unsatisfactory barracks-type quarters were available. The evidence establishes that defendant had fully expected and was justified in expecting that adequate quarters and proper health safeguards would be supplied to the migrant workers at Marsing. Unknown to the defendant, the camp was apparently overfilled. It is not proved that the defendant failed, without justification, to comply with the terms of the working arrangement. No breach of this section of the statute sufficient to sustain a damage claim was established by plaintiffs.

■ It is on the contention that defendant violated the provisions of Sec. 2045(b) of the Act that plaintiffs now place their greatest emphasis. This statutory provision obliges a labor contractor to ascertain and disclose to the best of his knowledge to each worker information of, among other things, the housing to be provided. It is certain from the evidence that Amalgamated employers did not have any personal contact with the plaintiffs. Defendant dealt with the recruiter, who in turn signed up the head of the family. The father of Celso Salinas signed up for the plaintiffs Salinas. Be that as it may, defendant did disclose to plaintiffs' agent, the recruiter, the type of housing

anticipated. Defendant relied on the labor camp management's advice as to availability of units approved by the State Health Department. It follows that defendant ascertained and as best it could advised the workers of the housing thought on the best knowledge to be available and set aside for migrant workers in the beet fields. This arrangement as far as the plaintiffs are concerned apparently broke down. But there is no proof of violation by defendant of Sec. 2045(b) of the Act.

Plaintiffs have the obligation of proof, by a preponderance of the evidence, the breach of the Act and the damages arising out of the violation thereof in order to recover. They have failed to carry this burden and may not therefore recover.

■ Defendant Amalgamated is entitled to judgment dismissing the complaint of the plaintiffs and judgment must be entered for the defendant and against plaintiffs. In view of the nature of the case and the vast disparity in the respective financial standings of the parties, no costs will be allowed.

This Memorandum will serve as formal Findings of Fact and Conclusions of Law as permitted by Rule 52, Federal Rules of Civil Procedure.