Hazel L. GLESENKAMP, Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE COMPANY, a corporation, Defendant.

Civ. No. C–70–1727–CBR.

United States District Court,
N. D. California.

April 11, 1974.

Ernest M. Thayer, Carroll, Burdick & McDonough, San Francisco, Cal., for plaintiff.

Pettit, Evers & Martin, San Francisco, Cal., for defendant.

## MEMORANDUM OF OPINION AND ORDER

RENFREW, District Judge.

This case arose out of a dispute as to the extent of coverage afforded under a group travel accident insurance policy issued to plaintiff by defendant Nationwide Mutual Insurance Company on May 27, 1967. On August 14, 1967, plaintiff was injured while boarding a boat. She subsequently filed a claim, explaining:

> "The accident occurred while I was attempting to board a motorboat, the Lucerne, at Lake Lucerne, Switzerland. When I arrived at the top of the gang plank, I stumbled over an extremely high threshhold [sic], which was unattended, and fell heavily fracturing my left femur." (Exhibits L–2–3 to Defendant's Memorandum in Support of Motion for Summary Judgment filed October 30, 1973.)

Defendant denied benefits on the ground that the policy afforded coverage only while she was riding as a passenger on a boat, not while she was in the act of boarding. Plaintiff's attorney then wrote to defendant with a new version of how the accident had occurred:

"Mrs. Glesenkamp was not entering the boat in the sense of boarding it initially. She had arrived on the boat and was in the process of entering the lounge in order to be seated as a passenger prior to the boat's departure." (Exhibit S to Defendant's Memorandum filed October 30, 1973.)

Because of the conflicting statements about where the accident had occurred, defendant continued to deny the claim and asked that the conflict be resolved. After unsuccessful efforts to resolve the conflict to defendant's satisfaction, plaintiff instituted this lawsuit on August 13, 1970, alleging causes of action based on fraud, breach of contract, and constructive trust. The breach of contract and constructive trust claims were disposed of on March 19, 1971, when this Court granted plaintiff's motion for summary judgment on the issue of defendant's liability to her under the policy. Thereafter, on May 4, 1972, this Court denied defendant's motion to dismiss the remaining fraud claim on the ground that satisfaction of the claims under the contract did not bar further action on the fraud claim since the claims arose out of separate and distinct facts.[1]

There are now three motions before the Court. Defendant has moved for summary judgment on the ground that there are no genuine issues of material fact; plaintiff has moved for leave to amend her complaint to allege that defendant breached the implied covenant of good faith and fair dealing and that it intentionally inflicted emotional distress when it denied her claim for injuries; and plaintiff has also moved for leave to amend her complaint to add a cause of action for fraud against National Travel Club, Inc., the organization through which plaintiff received her insurance policy.

In the year and a half since the Court's order denying defendant's motion to dismiss, plaintiff has failed to establish any facts which would support her fraud claim.

Plaintiff claims that defendant's fraudulent scheme began prior to the issuance of her policy when the defendant changed the definition of "injury" in its travel accident insurance policy. Prior to January, 1967, the policy covered any injury sustained "while riding as a passenger * * * in or on (including boarding and alighting from) any land or water conveyance * * *." On January 2, 1967, the policy was amended and the "boarding and alighting" language was deleted.[2] Plaintiff argues that when defendant issued her insurance policy it intended to rely on the altered language to deny any claims from persons injured in the act of boarding or alighting, in spite of its knowledge that such claims were covered by the amended policy. Defendant's denial of her claim is said to be further evidence of this fraudulent scheme.

In its motion for summary judgment defendant presents affidavits of three of the persons involved in amending the policy and of five other employees who were involved in processing plaintiff's claim. These uniformly support defendant's contention that it acted in good faith both in amending the policy and in handling plaintiff's claim. Plaintiff, on the other hand, has failed to present any counter affidavits or to depose any of defendant's employees. She filed a notice of deposition and an overly broad request for production of documents on October 2, 1972, covering the eleven employees who were consulted in connection with the amendment to the policy. On December 14, 1972, following the Court's denial of her motion to compel production of documents, plaintiff stipulated to a continuance of the date for the depositions until a "mutually convenient date sometime in the future." No further action is reflected in the file for almost one year when on September 27, 1973, plaintiff filed a certificate of readiness certifying that all depositions and discovery were completed. Defendant's motion for summary judgment followed on October 30, 1973. In a tardy effort to find any facts to support her claim, and contrary

---

1. The opinion is reported at 344 F.Supp. 517.

2. While not relevant here, the policy was also amended to specify the particular types of conveyance covered.

to the representations to the Court contained in the certificate of readiness, plaintiff noticed depositions of the eight persons whose affidavits were attached to the motion for summary judgment and also of five other persons who were involved in the policy amendment. Aside from the burden presented by the number of depositions, they were to be held in Ohio, New York, Florida, and Oregon. This notice was vacated by the Court on December 27, 1973, after a hearing on the motion for summary judgment.

■ Plaintiff now urges the Court not to grant summary judgment without giving her another chance to depose defendant's affiants and other persons involved in amending the policy. Plaintiff has known the names of all eleven people involved in amending the policy since June of 1971. (*See* Answer No. 32, Defendant's Further Answers to Interrogatories filed June 4, 1971.) Three of the eight affiants are included in this group and the rest are easily identifiable employees of defendant who were involved in handling plaintiff's claim. Indeed, the names of all but two appeared repeatedly in the extensive correspondence between plaintiff and defendant with respect to her claim. Her failure to depose them until after filing a certificate of readiness and until after a motion for summary judgment was filed was a factor considered by the Court in declining her request for further discovery. *See Schneider v. McKesson & Robbins, Incorporated*, 254 F.2d 827, 831 (2 Cir. 1958). Although summary procedures should be used sparingly where questions of motive or intent are involved, *Poller v. Columbia Broadcasting*, 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), plaintiff's failure to discover any facts in support of her claim for fraud in a year and a half, especially in light of this Court's prior warning that "plaintiff may well have a significant problem of proof as to the factual basis underlying her claim of fraud" (*Glesenkamp, supra*, 344 F.Supp. at 519), convinces the Court that allowing addition-al discovery would not serve the interests of justice. *See First Nat. Bank v. Cities Service*, 391 U.S. 253, 296–299, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968).

■ Plaintiff also argues that, even in the absence of evidence in the form of affidavits or depositions, the legal definition of passenger so clearly covers boarding and alighting that amending the policy and denying her claim are, in themselves, evidence of fraudulent intent. While it is true that, in general, the cases have said that a person in the process of boarding is included within the definition of the term passenger, 10 Couch on Insurance 250 (1962); 1A J. Appleman, Insurance Law & Practice 431–433 (1965), these same cases point out that the precise facts of the particular situation are critical to the determination. *See, e. g., Grier v. Ferrant*, 62 Cal.App.2d 306, 310–312, 144 P.2d 631, 633–634 (1944). It is possible that defendant, in amending the policy, wished to avoid the possibility of having the "boarding and alighting" language interpreted so as to further extend coverage beyond the mere definition of passenger, e. g., a person injured while in a terminal in an area not under the control or dominion of the public conveyance which the insured was seeking to board. As to plaintiff's contention that the exact location of her fall was unimportant because she was within the scope of the term "passenger" whichever version of the accident was correct, both the Ohio and California Departments of Insurance evidenced great interest in ascertaining exactly where and under what circumstances the accident occurred, and whether the plaintiff was already aboard the boat or not. (Exhibits X and AA–1 to Defendant's Memorandum filed October 30, 1973.)[3] Furthermore, nowhere in all the correspondence between plaintiff's attorney and defendant during the three years preceding the filing of this complaint did plaintiff's attorney argue that it was unimportant whether plaintiff was boarding or already on board the boat. Indeed, plaintiff's letters to defendant and

---

**3.** Implicit in the correspondence was the understanding of both Departments that were the original version of the facts correct, plaintiff would not have been covered.

to the California and Ohio Insurance Departments stressed that the claim should be paid because, notwithstanding her original version of how the accident occurred, she had in fact been on board at the time. (Exhibits S and U–2 to Defendant's Memorandum filed October 30, 1973.)

In the absence of any evidence to support a claim of fraud or to suggest that further discovery at this late date would be appropriate, defendant's motion for summary judgment is granted.

■ Plaintiff has moved for leave to amend her complaint to charge defendant with a breach of the covenants of good faith and fair dealing and with an intentional infliction of emotional distress in its refusal to honor her claim. She argues that this amendment will relate back to the date of filing of the original complaint, thus avoiding the bar of the statute of limitations, because it arises out of the same transaction or occurrence as does the rest of the complaint. In fact, however, the complaint as it now stands only alleges fraud arising out of the issuance of a policy to plaintiff; the causes of action involving defendant's refusal to honor her claim were disposed of by summary judgment on March 19, 1971. To the extent that the new causes of action arise out of transactions common to the fraud claim, plaintiff has failed to establish any facts to support the necessary allegations of intent and further discovery would not be appropriate, in light of all the circumstances.

Plaintiff explains the long delay in bringing this motion on the ground that the claims are based on newly created theories of liability. Both theories, however, antedate this action. *Crisci v. Security Insurance Co. of New Haven, Conn.*, 66 Cal.2d 425, 429, 58 Cal.Rptr. 13, 16, 426 P.2d 173, 176 (1967) (good faith and fair dealing); *State Rubbish Collectors Ass'n v. Siliznoff*, 38 Cal.2d 330, 337–339, 240 P.2d 282, 285–286 (1952) (intentional infliction of emotional distress). The cases cited by plaintiff (Plaintiff's Memorandum in Support of Motion for Leave to File Amendment to Complaint filed December 17, 1973, p. 2) are

simply more recent decisions applying the existing theories of liability and in fact cite the earlier authorities. Plaintiff's understandable desire to avoid the effect of defendant's motion for summary judgment is insufficient reason for infusing life into a case where plaintiff has been unable for three years to establish any genuine issues of fact.

■ Regarding plaintiff's final motion to amend her complaint to add a fraud claim against National Travel Club, Inc. (NTC), it is the duty of the Court to decide whether the ends of justice require that leave be granted to amend at this time. Rule 15(a), Federal Rules of Civil Procedure. Plaintiff contends that although this amendment will not qualify under Rule 15(c) for relation back, the claim is not barred by the statute of limitations because the fraud was discovered no earlier than February 26, 1973. Plaintiff cites two letters from NTC to her attorney as the newly discovered evidence of fraud by NTC. (Plaintiff's Closing Memorandum in Support of Motion for Leave to File Amendment to Complaint filed January 18, 1974, pp. 5–6.) The Court finds nothing in these letters or elsewhere in the file which would suggest any different relationship between NTC and defendant or any different involvement by NTC in these matters than was known to plaintiff at the filing of this action. Allowing plaintiff to amend now would serve only to give her another opportunity, at the further expense of defendant and NTC, to search for evidence of fraud which she has been unable to find in the three-year life of this action. The liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens. The time must arrive in every case when the plaintiff must demonstrate that there is a genuine issue for trial or have summary judgment entered against him.

Accordingly, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendant's motion for summary judgment is

granted and plaintiff's motions for leave to amend the complaint are denied.

IT IS HEREBY FURTHER ORDERED, ADJUDGED AND DECREED that the complaint is dismissed and that judgment be entered in favor of defendants.