Ray MARSHALL, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

HERINGER RANCHES, INC., a corporation, Lester S. Heringer, and Marcial Fernandez, Defendants.

Civ. No. S–77–110.

United States District Court, E. D. California.

Feb. 23, 1979.

Norman S. Nayfach, U. S. Dept. of Labor, San Francisco, Cal., for plaintiff.

Samuel D. Hinkle, IV, McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for defendants.

## DECISION, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

HAUK,* District Judge.

This action by the Secretary of Labor (the "Secretary") seeks to enjoin certain activities which he believes violate the Farm Labor Contractor Registration Act of 1963, as amended, 7 U.S.C. § 2041, *et seq.* (the "Act"). It is brought pursuant to 7 U.S.C. § 2050a(c).

The Complaint alleges that two individuals, Lester S. Heringer and Marcial Fernandez, violated 7 U.S.C. § 2043(a) by engaging in activities as a farm labor contractor within the meaning of 7 U.S.C. § 2042(b) without first obtaining a certificate of registration from the Secretary. The Complaint further alleges that the third defendant, Heringer Ranches, Inc., ("Heringer Ranches") violated 7 U.S.C. § 2043(c) by engaging the services of Mr. Heringer and Mr. Fernandez without first determining that they possessed such certificates.

Defendants have moved for summary judgment. They argue that even if Mr. Heringer and Mr. Fernandez have engaged in some activities which could be characterized as those of a farm labor contractor, the Act does not apply; 7 U.S.C. § 2042(b)(2) and 7 U.S.C. § 2042(b)(3) exempt them from the Act's coverage. Heringer Ranches further argues that it did not violate the Act because Mr. Heringer and Mr. Fernandez are exempt and not required to obtain a certificate of registration.

\* Sitting by designation of Chief 9th Circuit Judge James R. Browning.

When Congress passed the Act it explained its purpose in language that has remained unchanged:

> The Congress hereby finds that the channels and instrumentalities of interstate commerce are being used by certain *irresponsible contractors* for the services of the migrant agricultural laborers who exploit *producers* of agricultural products, migrant agricultural *laborers, and the public* generally . . . . 7 U.S.C. § 2041(a) (Emphasis added)

Congress clearly intended to differentiate between "contractors" and "producers." That intent has been repeatedly manifested in legislative history and subsequent amendments to the Act. The report on the Senate bill (which became the Act) describes those sought to be regulated as follows:

> Farm labor contractors are the middlemen in making work arrangements between farmworkers and growers and in this capacity . . . act as an intermediary between the migrant worker and the farmer. . . .
>
> \* \* \* \* \* \*
>
> The act qualifies the definitions of farm labor contractor by specifying that the term does not include (1) . . .; (2) any farmer, processor, or person engaged in certain related businesses who acts as a farm labor contractor for the purpose of supplying migrant workers solely for his own operation; (3) full-time or regular employees of (1) or (2) whose labor contracting activities are carried on for the employer as only one aspect of their overall scope of employment with such employer or carried on for the employer for such a substantial portion of the year and under such terms as to negate the existence of an independent contractor relationship . . . .

S.Rep.No.202, 88th Cong., 2d Sess. (1963), *reprinted in* 2 [1964] U.S.Code Cong. & Admin.News pp. 3690, 3694.

A 1974 amendment [1] resulted in the current definition of a "farm labor contractor."

1. Act of Dec. 7, 1974, Pub.L.No. 93–518, 88 Stat. 1652. The Act was twice amended in

The legislative history of that amendment shows that Congress continued to view farm labor contractors as middlemen independent of both farmer and workers:

> Although the specific functions of the farm labor contractor, often called a "crew leader" or "crew pusher", might vary from job to job, his role essentially remains the same—a bridge between the operator and the worker. . . .

S.Rep.No.93–1295, 93d Cong., 2d Sess. (1974), *reprinted in* 4 [1974] U.S.Code Cong. & Admin.News pp. 6441, 6442.[2] Congress clearly did not intend the Act to cover farmers or their foremen:

> [T]he exemption in section 3(b)(3) of the Act has been revised to apply to any full-time or regular employees of any entity referred to in section 3(b)(1) or (2) if their covered activity is performed on no more than an incidental basis and is performed solely for such entity. While employment relationships vary, it is the Committee's intent that *foreman and similar bona fide employees will not have to register* as Farm Labor Contractors if it can be shown, for example, that they are full-time and permanent employees of an employer, who utilizes a limited portion of their time for activities as defined in section 3(b) of the Act. *Id.* at 6447 (Emphasis added.)

This conclusion is further illustrated by the exchange on the Senate floor between Senator Chiles and Senator Nelson of the Senate Labor and Public Welfare Committee, which committee reported favorably on the 1974 amendments to the Act:

> Mr. CHILES. . . . [M]y concern is with the term "incidental." I do not think the committee report adequately explains what is meant by incidental duty of employment. I do not feel that the committee intended that regular employees who may perform some duties for their employer relative to securing migrant labor are to be required to register.

> It is my understanding that the bill aims at those who on a fulltime basis hire or recruit migrant labor. I would appreciate if the distinguished Senator from Wisconsin would clarify this point for me.

> Mr. NELSON. Mr. President, the purpose of this provision is to prevent farm labor contractors from avoiding registration by becoming the employee of each and every grower for whom they recruit and hire migrant workers, while at the same time providing an exemption under the act for the regular employee of a grower whose duties may include recruiting and hiring solely for his employer. The intent is stated on page 7 of the Senate report (S.Rep.No.93–1206) on H.R. 13342, which reads as follows:

>> In addition, there is a new exemption for his full-time or regular employees if their recruitment activity constitutes only an incidental duty of employment and is performed solely for him.

> So I think that the committee report and this colloquy make it clear.

> Mr. CHILES. To qualify that a little, the fact that he, being a permanent employee, has this activity as one of his responsibilities would not cause him to have to register, so long as he had some basis of showing that he was a permanent employee, had been, and had other duties. Even though this duty might be considered to be an important aspect of his job responsibility by his employer, the employer might say, "It is your job to do this a portion of the year," if he were a permanent employee and continued to have other duties, he would not be considered to have to register.

> Mr. NELSON. The Senator is absolutely correct in the manner in which he has stated it. (*Congressional Record*, October 16, 1974, v. 120, pt. 27, p. 35902, col. 2)

Regulations issued by the Secretary of Labor under the Act confirm this understanding of the Act's intended application:

---

1976 in ways here immaterial. See Act of Apr. 5, 1976, Pub.L.No. 94–259, 90 Stat. 314; Act of Oct. 19, 1976, Pub.L.No. 94–561, 90 Stat. 2644.

**2.** As in 1963, the Senate bill was the one enacted.

The Act was intended to regulate the practices of all persons functioning in the capacity of middlemen between the farmer, processor, etc., and the migrant worker. . . .

\* \* \* \* \* \*

[F]ull-time or regular employees [of farmers exempt from the Act] are excluded because *they constitute no more than the instruments or means by which the organizations or individuals* exempt under . . . the Act, operate. . . [3]

Congress perceived the middlemen contractors to be exploiting both farm workers and farmers and sought by the Act to prevent such abuses. *Cf., Salinas v. Amalgamated Sugar Co.*, 341 F.Supp. 311 (D.Idaho 1972); S.Rep.No.93-1295, *supra*, 4 [1974] U.S.Code Cong. & Admin.News at p. 6442. Congress did *not* intend to require that farmers, who were themselves being exploited by such middlemen, register under the Act. Two recent cases, including one decided in this district, concur in this construction of the Act. *Marshall v. Silver Creek Packing Co.*, 83 C.C.H. Labor Cases ¶ 33615, No. F-76-25 Civ. (E.D.Cal. Aug. 23, 1977), *appeal docketed*, No. 78-1200 (9th Cir. Jan. 27, 1978); *Jenkins v. S&A Chaissan & Sons, Inc.*, 449 F.Supp. 216 (S.D.N.Y. 1978).

█ Section 3(b)(2) of the Act, 7 U.S.C. § 2042(b)(2), specifically exempts farmers supplying workers for their own operations. It matters not whether such farmers engage in activities defined by the Act as those of a farm labor contractor only incidentally or on a full-time basis—the exemption is blanket. To the extent that Heringer Ranches engages in such activities it does so for its own account alone.[4] Thus the corporation could not be found guilty of failing to register as a farm labor contractor, and indeed no such violation of the Act is charged. *Marshall v. Silver Creek Packing Co., supra; Marshall v. Green Goddess Avocado Corp.*, 84 C.C.H. Labor Cases ¶ 33712 (S.D.Ca.1978).

█ On the other hand, the Secretary has charged Messrs. Heringer and Fernandez, full-time employees of Heringer Ranches, with failure to register. This position makes no sense; it renders the exemption for Heringer Ranches meaningless. A corporation can act only through its officers and agents. If the corporation is not a "farm labor contractor" by virtue of acting as described in the Act, neither is the corporate employee who physically takes the actions attributed to the corporation.[5] *Jenkins v. S&A Chaissan & Sons, Inc., supra.*

█ Section 3(b)(3) of the Act, 7 U.S.C. § 2042(b)(3), also exempts Messrs. Heringer and Fernandez, for they are full-time employees of Heringer Ranches, a farmer exempt from the Act by reason of 7 U.S.C. § 2042(b)(2), who "hire" and "transport" or "furnish" seasonal labor only for their employer and on no more than an incidental basis. Uncontradicted evidence shows that Mr. Heringer spends less than five percent of his time "hiring" and "transporting" or

---

**3.** 29 C.F.R. §§ 41.17(a), 41.18(a) (1977) (Emphasis added).

The Secretary's regulations are contained in parts 40 and 41 of 29 C.F.R. (1977). Part 40, promulgated in 1976 and 1977, see 41 Fed.Reg. 26,820 (1976); 42 Fed.Reg. 22,364 (1977), recites the definitions in the Act and provides for its enforcement. Part 41, which is of greater interest here, interprets the Act's exemptions. Part 41 was promulgated in 30 Fed.Reg. 2945 (1965) but by its recodification in the current Code of Federal Regulations remains the applicable interpretive pronouncement.

**4.** To be a "farm labor contractor" within the meaning of 7 U.S.C. § 2042(b), the person must engage in the enumerated activities of a farm labor contractor "for a fee." It is also clear

that Heringer Ranches does not engage in such activities for a fee.

**5.** Mr. Heringer falls within the subsection (b)(2) exemption for other reasons as well. He owns 25 percent of the stock of the family corporation. Thus, even if subsection (b)(2) did not embrace all employees of a corporate farmer, Mr. Heringer would continue to be exempt as a farmer supplying workers "solely for *his own* operation." Any other conclusion would exalt form over substance. Subsection (b)(2) clearly applied to Mr. Heringer when the farm was operated as a family partnership. It should continue to apply now that he is a stockholder in the family corporation.

"furnishing" workers; Mr. Fernandez spends less than ten percent of his time on such activities.

The activities performed during these small amounts of time are truly "incidental" to the jobs of both men. Their other duties are extremely important to the farming operation and comparatively of much greater significance. Mr. Heringer is in overall charge of the family farm, and Mr. Fernandez' major responsibilities are those of a working supervisor. Moreover, neither of these men is crucial to the activities of "hiring" and "transporting" or "furnishing;" many other farm employees also are able to and do engage in such activities as incidental portions of their own jobs. Applying the tests set forth in *Usery v. Golden Gem Growers, Inc.*, 417 F.Supp. 857, 861–62 (M.D.Fla.1976), Messrs. Heringer and Fernandez indisputably pursue such activities "on no more than an incidental basis" and are therefore within the exemption of § 2042(b)(3).

The Complaint alleges a violation of the Act by Heringer Ranches, Inc., only insofar as it has failed to ascertain the registrations of Messrs. Heringer and Fernandez. The action against Heringer Ranches, Inc. thus turns upon the result of the action against the individual defendants. Since Messrs. Heringer and Fernandez are not "farm labor contractors," Heringer Ranches need not have determined that they had registered with the Secretary.

Congress wrote the Act intending to exclude growers from its scope. The language of the Act and its legislative history are models of clarity in this respect. The Secretary of Labor, in bringing this action, has tried to turn the Act inside out. The position he urges here would compel every incorporated farmer in California and elsewhere to register its foremen and officers as farm labor contractors. The Act simply does not admit of this result.

Messrs. Heringer and Fernandez are not "farm labor contractors" by any stretch of the imagination. Heringer Ranches is entitled to use their services without ascertaining that they have registered with the Secretary of Labor. There is no dispute as to any material fact concerning these issues, and Defendants are entitled to judgment as a matter of law. Accordingly, the Court makes the following Findings of Fact and Conclusions of Law:

*Findings of Fact*

1. Heringer Ranches is a farming corporation engaged in growing and harvesting tomatoes, sugar beets, alfalfa, safflower, corn, pears and other crops. Several generations of Heringers have worked the farm which the family operated as a partnership until 1973.

2. In 1973, the Heringers incorporated as Heringer Ranches, Inc. At all times relevant, the ownership of the corporation resided equally in four Heringer brothers, including defendant Lester S. Heringer, who is president and chief executive officer.

3. Mr. Heringer is a full-time employee of Heringer Ranches. Most of his time is spent in the fields making and implementing the decisions which the operation of the farm requires. They include what crops to plant, where to plant them, how to prepare each field, when and how to fertilize, when to plant, when and how to irrigate, when to harvest, etc. In addition, Mr. Heringer deals with such matters as negotiation of loans, seed purchasing, payrolls and accounting, equipment maintenance and acquisition and crop sales.

4. Mr. Fernandez is foreman and a full-time employee of Heringer Ranches. He has worked full-time and exclusively for the Heringers since 1948. He spends most of his time implementing Mr. Heringer's decisions as to irrigation, an activity critical to the success of a Sacramento Valley farm. Prior to the growing season, Mr. Fernandez helps prepare fields for planting. During the growing season, Mr. Fernandez supervises the cultivation and weeding of the fields. He also serves as a jack-of-all-trades, repairing irrigation lines, maintaining fences, fixing plumbing, painting, etc.

5. From time to time, Mr. Heringer and Mr. Fernandez perform certain functions

for Heringer Ranches which relate to the hiring process, as do other members of the Heringer family. When workers arrive, they are put on the Heringer Ranches payroll—"hired"—just as any employee of any business is hired.

6. Some of the Heringer Ranches workers stay in a camp maintained by Heringer Ranches. Not all have cars, and Mr. Fernandez sometimes transports some of them to the Heringer Ranches' fields which need attention that day, a maximum distance of ten or eleven miles. During the workday, Mr. Fernandez or Mr. Heringer transport workers from one field to another within the farm's boundaries.

7. Neither Mr. Heringer nor Mr. Fernandez "recruits" or "solicits" migrant workers in other areas and brings them to the Sacramento Valley; they do not "recruit" or "solicit" migrant workers at all. They do not "furnish" migrant workers to various farms. Heringer Ranches, Mr. Heringer and Mr. Fernandez deal with migrant workers solely for Heringer Ranches.

8. Mr. Heringer spends less than five percent of his time in activities which could be characterized as "hiring," "transporting" or "furnishing" as those terms are used in the Act; Mr. Fernandez less than ten percent. Neither of them engage in any such activities for any other "person," as that term is used in the Act. 7 U.S.C. § 2042(a).

9. Heringer Ranches is a primary employer of migrant labor solely for its own farming operation. It does not do so for a fee.

10. Mr. Heringer and Mr. Fernandez act only as the employees and agents of Heringer Ranches, not as middlemen.

### Conclusions of Law

1. This Court has jurisdiction over the parties and subject matter of this action under 7 U.S.C. § 2050a(c).

2. A corporation can be an entity described in 7 U.S.C. § 2042(b)(2). *Marshall v. Silver Creek Packing Co., supra.* To the extent Heringer Ranches engages in activity which can be characterized as that of a "farm labor contractor" within the meaning of 7 U.S.C. § 2042(b), Heringer Ranches is a farmer personally engaged in such activities solely for its own operation within the meaning of and as referred to in 7 U.S.C. § 2042(b)(2) and is exempt from coverage under the Act.[6]

4. Lester S. Heringer is an owner, officer and regular and full-time employee of Heringer Ranches. To the extent, if any, he engages in activity which can be characterized as that of a farm labor contractor within the meaning of the Act, he acts only as the agent of Heringer Ranches, Inc., not as a middleman. The Act does not cover him and he is exempt under 7 U.S.C. § 2042(b)(2).[7]

5. To the extent, if any, Lester S. Heringer engages in any activity which can be characterized as that of a farm labor contractor within the meaning of the Act, he is a regular and full-time employee of Heringer Ranches, which is an entity referred to in 7 U.S.C. § 2042(b)(2), and engages in such activity solely for Heringer Ranches on no more than an incidental basis. Mr. Heringer is also exempt under 7 U.S.C. § 2042(b)(3).[8]

6. Marcial Fernandez is a foreman and a regular and full-time employee of Heringer Ranches, Inc. To the extent, if any, he engages in activity which can be characterized as that of a farm labor contractor, he acts only as the agent of Heringer Ranches Inc., not as a middleman. The Act does not cover him, and he is exempt under 7 U.S.C. § 2042(b)(2).[9]

7. To the extent, if any, Marcial Fernandez engages in any activity which can be characterized as that of a farm labor con-

---

6. See *Jenkins, supra*, 449 F.Supp. 216 at 228, and Opinion Letter Wage and Hour Division, Employment Standards Division, Department of Labor dated Oct. 3, 1977, cited therein.

7. Ibid.

8. Ibid.

9. Ibid.

tractor within the meaning of the Act, he is a *regular* and full-time employee of Heringer Ranches, which is an entity referred to in 7 U.S.C. § 2042(b)(2), and engages in such activity solely for Heringer Ranches on no more than an incidental basis. Mr. Fernandez is also exempt under 7 U.S.C. § 2042(b)(3).[10]

8. Mr. Heringer and Mr. Fernandez are not required to obtain a certificate of registration as provided in 7 U.S.C. § 2043(a).

9. In engaging the services of Mr. Heringer and Mr. Fernandez, Heringer Ranches, Inc. has not violated 7 U.S.C. § 2043(c).

10. Plaintiff is not entitled to the relief sought by him and shall take nothing by his Complaint.

11. Defendants are entitled to summary judgment in their favor.

Let Judgment be entered accordingly.

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

The motion of Plaintiff Secretary of Labor for leave to file his Proposed First Amended Complaint came on regularly for hearing on February 5, 1979, before The Honorable A. Andrew Hauk, Judge of the United States District Court for the Central District of California, sitting by designation of The Honorable James R. Browning, Chief Judge of the United States Court of Appeals for the Ninth Circuit.

Plaintiff appeared by Norman S. Nayfach, Esq. of the Office of the Solicitor of the United States Department of Labor; Defendants appeared by Samuel D. Hinkle IV, Esq. of McCutchen, Doyle, Brown & Enersen.

The Court has given full consideration to the papers filed in this matter and the oral argument of counsel. The Proposed First Amended Complaint is vague

and anonymous, asserting that defendant Heringer Ranches, Inc. "is engaging the services of one or more farm labor contractors." However, papers filed by plaintiff in support of his motion reveal that two men, Genaro and Alfonso Espinoza, are the additional alleged "farm labor contractors" * to which the Secretary refers.

Undisputed evidence in the record indicates that Genaro and Alfonso Espinoza are regular and full-time employees of Heringer Ranches, Inc. who engage in activities which could be characterized as those of a farm labor contractor, if at all, for no more than five percent of the time. Clearly, these men engage in such activities, if at all, solely for Heringer Ranches, Inc. "on no more than an incidental basis," as that phrase is used in 7 U.S.C. § 2042(b)(3). They are exempt from the Farm Labor Contractor Registration Act, as amended, 7 U.S.C. §§ 2041 *et seq.* Accordingly, the Proposed First Amended Complaint serves no purpose. It would be an idle act for the Court to allow it to be filed.

Furthermore, the Proposed First Amended Complaint is offered too late. This action has been pending for almost two years. There has been substantial discovery; Plaintiff has been on notice of the facts upon which he relies for his proposed amendment for approximately a year and a half. This action is now ready for resolution. The parties have been ordered to be ready to proceed to trial immediately if Defendants' motion for summary judgment is not granted. If the proposed amendment were filed, additional discovery would be required, resulting in additional delays in resolving this matter and undue prejudice to Defendants.

The issues are squarely presented by the pleadings presently on file; the Proposed First Amended Complaint adds nothing. Denying Plaintiff's motion does not prejudice him or affect his right to a determination of the relevant issues.

10. Ibid.

* Lester S. Heringer and Marcial Fernandez are specifically alleged to be "farm labor contrac-

tors" elsewhere in the Proposed First Amended Complaint.

Defendants have moved for summary judgment. In response, the Secretary has asked to amend his Complaint and change his case at the last minute. Justice is not served by permitting the Secretary to amend his Complaint under these circumstances. As stated in *Glesenkamp v. Nationwide Mut. Ins. Co.*, 71 F.R.D. 1 (N.D. Cal.1974), aff'd *per curiam* 540 F.2d 458 (9 Cir. 1976):

> The liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens. The time must arrive in every case when the plaintiff must demonstrate that there is a genuine issue for trial or have summary judgment entered against him. 71 F.R.D. at 4

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Leave to File First Amended Complaint is denied.