**AMCAST INDUSTRIAL CORPORATION, et al.,**
**Plaintiffs,**

v.

**DETREX CORPORATION, et al., Defendants.**

**Civ. No. S88–620.**

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 30, 1990.

**214**

D. Jeffrey Ireland, Dayton, Ohio, Robert J. Palmer of May, Oberfell & Lorber, South Bend, Ind., for plaintiffs.

John C. Hamilton, Doran, Blackmond, Ready, Hamilton & Williams, R. Michael Parker, Barnes & Thornburg, South Bend, Ind., John L. Muething, Cincinnati, Ohio, for defendants.

## MEMORANDUM AND ORDER

ROBIN D. PIERCE, United States Magistrate.

This case is before the court on a motion by plaintiffs Amcast Industrial Corporation ("Amcast") and its wholly owned subsidiary, Elkhart Products Corporation ("EPC"), for leave to file an amended complaint. For the reasons which follow, the court concludes that the motion must be denied.

## Background

After it purchased all of the shares in EPC, what is now Amcast learned that the soil and groundwater under EPC's plant in Elkhart, Indiana was polluted with trichloroethylene ("TCE"), an industrial solvent which EPC had used for several years in manufacturing copper pipe fittings. On October 13, 1988, Amcast and EPC filed the present action seeking the recovery of damages to real property, together with past and future costs resulting from the pollution, against EPC's former shareholders (the "Former Shareholder Defendants"), the alleged "owners" of the plant; a subgroup of Former Shareholder Defendants (the "Representing Shareholder Defendants"), who allegedly made misrepresentations and breached certain express warranties in the Share Purchase Agreement; Detrex Corporation ("Detrex"), which allegedly supplied the TCE; and unknown Detrex truck drivers (the "Doe Defendants"), who allegedly spilled it on the ground when making their deliveries. Although not identified as such in the complaint, a number of the Former Shareholder Defendants have appeared collectively as the "Hillman Defendants."

Under Count III of the complaint, Amcast and EPC allege that because the Former Shareholder Defendants "were the owners of the Plant" when the spills occurred, they are "strictly liable to reimburse Amcast for the amounts Amcast has expended or will hereafter expend in taking removal and remedial actions," pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9607(a).[1] Count XIII seeks a declaratory judgment holding that all defendants, including the Former Shareholder Defendants, must indemnify Amcast and EPC for any future claims resulting from the TCE spills at the plant. Under Counts X, XI

---

**1.** CERCLA imposes liability on "any person who at the time of disposal of any hazardous substance owned or operated any ... facility at which such hazardous substances were disposed of...." 42 U.S.C. § 9607(a)(2). With near perfect circularity, CERCLA defines "owner or operator" as "any person owning or operating such facility...." 42 U.S.C. § 9601(20). This led the Seventh Circuit in *Edward Hines Lumber Co. v. Vulcan Materials Co.*, 861 F.2d 155, 157 (7th Cir.1988), to observe that "[t]he circularity strongly implies, however, that the statutory terms have their ordinary meanings rather than unusual or technical meanings."

and XII, the plaintiffs seek indemnification from the Representing Shareholder Defendants based upon alleged misrepresentations and the breach of express warranties in the Share Purchase Agreement.

On December 27, 1988, the plaintiffs filed a motion requesting that the court set a pretrial and discovery conference, stating that "[b]ecause of the complexity of the issues posed by plaintiffs' thirteen count Complaint and the number of parties involved in this matter (more than 90), such a conference is necessary to establish early and continuing control over this matter so that the case will not be protracted because of lack of management, thereby causing the needless expenditure of resources by the parties and the court." On January 17, 1989, the court ordered, at the plaintiffs' request, that all discovery be stayed pending the issuance of a formal scheduling order, and ordered the parties to submit written status reports. In addition, the court's order of January 17 stated:

Following the filing of the status report required by this order, the court will, pursuant to Fed.R.Civ.P. 16(b), enter a scheduling order. The court draws the parties' attention to that portion of Rule 16(b) that provides that no amendment may be made to the scheduling order except upon a showing of good cause, which showing the court will require to be in writing.

During or following the conference, the court will proceed to enter any appropriate orders with respect to the conduct and scheduling of discovery, and the setting of pretrial deadlines. The parties are hereby advised that any schedule fixed by the court during or following the status conference 'shall not be modified except by leave of the judge or a magistrate ... upon a showing of good cause.' Rule 16(b).

Although the Former Shareholder Defendants and Detrex subsequently filed status reports as ordered, the plaintiffs did not. The report submitted by the Former Shareholder Defendants on February 13, 1989, advised that they anticipated "filing a motion for summary judgment on the issue of whether or not the former shareholders of Elkhart Products Corporation, as a matter of law, have any responsibility for the remedies claimed by Plaintiffs in Counts III and XIII." The court subsequently conducted a preliminary pretrial or status conference on February 21, 1989. After hearing from counsel, the court entered a written scheduling order and memorandum of status conference which established discovery deadlines and ordered "that any and all amendments to pleadings (including adding any additional parties) be filed on or before June 1, 1989."

On July 17, 1989, the Former Shareholder Defendants filed a motion for summary judgment on Counts III and XIII of the complaint, and the Representing Shareholder Defendants filed a motion to dismiss the pendent claims in Counts X, XI and XII, pursuant to Fed.R.Civ.P. 12(b)(1). Thereafter, on August 22, 1989, the Hillman Defendants filed a motion for summary judgment adopting the same grounds as the motion filed by the Former Shareholder Defendants. Briefing on the defendants' motions was completed on October 13, 1989.

The arguments of the Former Shareholder Defendants and the Hillman Defendants in support of their motions for summary judgment are simple and persuasive: that as corporate shareholders in EPC, they could not have been the "owners" of EPC's plant under long-established principles of corporations law; that they cannot, therefore, be held liable under Count III, which is predicated solely on the allegation that they were the "owners" of the facility under CERCLA; and that since their liability under Count III represents the only basis for the plaintiffs' common law indemnification theory under Count XIII, they are entitled to summary judgment on that claim, as well. The Representing Shareholder Defendants, in their motion to dismiss under Fed.R.Civ.P. 12(b)(1), argue that because they are also Former Shareholder Defendants and cannot be held liable as "owners" under the federal question presented in Count III, the court would lack jurisdiction over the subject matter of

the plaintiffs' pendent contract and tort claims in Counts X, XI and XII.

On January 30, 1990, nearly a year after the Former Shareholder Defendants first announced their intention to file a motion for summary judgment on Counts III and XIII, and more than three months after the briefing on defendants' motions for summary judgment and motion to dismiss was completed, Amcast and EPC submitted their motion for leave to file an amended complaint. The plaintiffs' motion, which boldly asserted that plaintiffs had not "unduly delayed in amending their complaint," made no mention of the June 1, 1989 deadline for filing amendments to the pleadings, nor did it request modification of the court's January 17, 1989 scheduling order.

The memorandum in support of plaintiffs' motion for leave stated initially that plaintiffs were seeking to file an amended complaint "in order to (1) assert additional claims for relief for contribution, one of which arises from an April, 1989 United States Environmental Protection Agency investigation; and (2) drop certain claims and parties from the litigation." In elaborating upon their purposes in seeking leave, the plaintiffs' memorandum further stated:

> First, the amended complaint adds claims for relief based upon contribution. One of the contribution claims arises from recent developments relating to prior releases of hazardous substances at Plaintiffs' manufacturing facility in Elkhart, Indiana (which is already the subject of this action). Specifically, in April 1989, Plaintiffs responded to a CERCLA § 104(e) request for information regarding the contamination of the Main Street Well Field site in Elkhart, Indiana. The United States Environmental Protection Agency ("USEPA") may find Plaintiffs to be Potentially Responsible Parties in the Main Street Well Field Superfund investigation. To the extent that the Defendants caused the spills of hazardous substances on to Plaintiffs' facility, and to the extent that the spills occurred during the time that the Shareholder Defendants owned *or operated* the facility, Plaintiffs are entitled to contribution from the Defendants because of the Defendants' acts are the basis for Plaintiffs' Superfund liability to the USEPA. Thus, Plaintiffs' amended complaint properly seeks to add a contribution claim with respect to the Main Street Well Field investigation. In addition, Plaintiffs' proposed amended complaint drops several pendent state claims for relief, and drops the Doe truck driver Defendants as parties. (emphasis supplied)

Apart from the one reference to the Shareholder Defendants as having "operated" the facility, the plaintiffs' motion and memorandum gave little hint that a primary purpose of the proposed amendment was to characterize the Former Shareholder Defendants, for the first time, as the "operators" of EPC's plant when the spills occurred. This apparently did not escape the defendants who, upon a close reading of the plaintiffs' 45-page proposed amended complaint, discovered that all the previous references to them merely as "owners" had been altered, and that they were now being referred to as the "owners *and [or] operators*" of the facility. The addition of the term "operators" would have the effect of significantly expanding the basis for defendants' liability under CERCLA, and thereby circumventing the pending motions for summary judgment.

The defendants did not file any objection to the plaintiffs' motion for leave within the 15 day period normally allowed under the court's Local Rules for responding to a motion. Unaware that the plaintiffs' motion transgressed the prior deadline for filing amendments, and believing that the defendants had no objection to the motion, the court granted the plaintiffs leave to amend, as a matter of routine, on February 15, 1990. Unknown to the court at the time, however, counsel for plaintiffs and the Former Shareholder Defendants had agreed informally to an extension of time for filing objections to the plaintiffs' motion. Upon being advised of the parties' agreement, the court issued its order of February 27, 1990, scheduling a hearing on the defendants' objections. Arguments

subsequently were heard on March 12, 1990. At the conclusion of the hearing, the court took the matter under advisement in order to more fully examine the proposed amendments and the defendants' objections in the context of CERCLA. Because the court previously granted the plaintiffs' motion, the defendants' objections will be treated as a request for reconsideration.

### Discussion

The determination of the plaintiffs' motion for leave to amend is governed by Rules 16(b) and 15(a) of the Federal Rules of Civil Procedure. Separate considerations arising under each of these Rules compel the conclusion that the plaintiffs' motion must be denied.

### Modification of Scheduling Order Under Rule 16(b)

Rule 16(b)(1) provides, in pertinent part, that a district court *"shall,* after consulting with the attorneys for the parties ... by a scheduling conference ..., enter a scheduling order that limits the time ... to amend the pleadings." (emphasis supplied) The drafters of Rule 16 contemplated that the court's scheduling order would normally " 'control the subsequent course of the action,' " while permitting the court to "modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension." Fed.R.Civ.P. 16(b) advisory committee note. Thus, Rule 16(b) states that "[a] schedule shall not be modified except by leave of the judge or magistrate ... *upon a showing of good cause."* (emphasis supplied)

As previously noted, the June 1, 1989 deadline for filing amendments to the pleadings was established pursuant to an initial Rule 16(b) scheduling conference which the plaintiffs, themselves, had requested. Although the court conducted a second scheduling conference on June 15, 1989, in order to establish further discovery deadlines, the plaintiffs never mentioned the possibility that they might, in the future, seek leave to amend their complaint, and the previous June 1, 1989, deadline for filing amendments was not dis-

turbed. When the plaintiffs ultimately did file their motion for leave to amend on January 30, 1990, they did not request any modification of the passed deadline for amendments, nor, indeed, did they even mention the deadline. When the Shareholder Defendants specifically raised the deadline in their objections, the plaintiffs responded that the defendants would not be prejudiced by the amendment and asserted that "[t]he memorandum in support of Plaintiffs' motion for leave to amend does explain why the ongoing U.S. EPA Region V investigation necessitated that the Plaintiffs add additional claims when they did."

It is apparent, however, that neither the plaintiffs' explanation, nor the asserted absence of prejudice to the defendants, suffices as a showing of "good cause" for modifying the June 1, 1989 deadline under Rule 16(b). The reference in plaintiffs' motion to the fact that in April, 1989 they "responded to a CERCLA § 104(e) request for information regarding the contamination of the Main Street Well Field site," and the fact that the EPA "may find plaintiffs to be Potentially Responsible Parties in the Main Street Well Field Superfund investigation," gives no indication that the plaintiffs would have been unable to submit their proposed amendments prior to the June 1, 1989 deadline, and it does not explain why the plaintiffs waited until January 30, 1990 to request leave. If there is some other explanation for plaintiffs' delay, they have not mentioned it, and an examination of the pertinent portions of the proposed amended complaint (¶¶ 31–37), provides no further insight into the reasons why the plaintiffs waited for nine months after April, 1989, to seek leave.

Further, the plaintiffs' tendered explanation has nothing to do with their new allegation that the defendants were also "operators" of a facility within the meaning of § 9607(a), and the plaintiffs have offered no reason at all for their failure to make such a claim sooner. Indeed, it is apparent from a review of the original complaint that the plaintiffs must have initially made a conscious decision to forego any allega-

tion that the Former Shareholder Defendants were "operators." In this regard, Count III recognizes that "[u]nder Section 107(a) of the Superfund Act [CERCLA], any person who at the time of disposal of any hazardous substance, such as TCE, owned or *operated* any facility which such hazardous substances were disposed of, is strictly liable...." (emphasis supplied) (Original Complaint, ¶ 27). Yet, the next paragraph in Count III alleges only that "[b]ecause the Former Shareholders were the *owners* of the Plant when TCE was disposed of at the Plant, the Former Shareholder are strictly liable to reimburse Amcast ... pursuant to Section 107(a) of the Superfund Act." (Original Complaint, ¶ 28). These allegations make it clear that the plaintiffs were well aware that "operators" could be held liable under CERCLA when they drafted their original complaint, but for some reason which they have never disclosed they chose not to allege that the Former Shareholders were "operators" until the Former Shareholders had moved for summary judgment on the grounds that they were not the "owners" of the plant.

Moreover, while the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted under Rule 15(a), it does not fulfill the "good cause" requirement of Rule 16(b). As the court stated in *Forstmann v. Culp,* 114 F.R.D. 83 (N.D.N.C. 1987):

> [A] party who attempts to file a motion to amend after the date specified in the pretrial scheduling order must demonstrate that there is some 'good cause' why the court should not adhere to the timetable specified in the scheduling order. Fed.R.Civ.P. 16(b). As explained in the Notes of the Advisory Committee on Rules, the party seeking to file the untimely amendment must demonstrate 'good cause' why the timetable 'cannot reasonably be met *despite the diligence of the party* seeking the extension.' ... A court's evaluation of good cause is not coextensive with an inquiry into the propriety of the amendment under case law interpreting Rule 15. Plaintiffs' citation to the liberality afforded motions to

amend under Rule 15 thus fails to demonstrate 'good cause' under Rule 16(b). (original emphasis)

114 F.R.D. at 85–86. *See In re Air Crash Disaster at Metro. Airport,* 130 F.R.D. 632 (E.D.Mich.1989); *Financial Holding Corp. v. Garnac Grain Co.,* 127 F.R.D. 165 (W.D. Mo.1989); *Truehart v. Blandon,* 684 F.Supp. 1368, 1371–72 (E.D.La.1988); *Gestetner Corp. v. Case Equipment Co.,* 108 F.R.D. 138, 140–41 (D.Me.1985). It is clear that the "good cause" requirement of Rule 16(b) contemplates an affirmative showing on the part of the moving party, demonstrating that the moving party would have been unable to meet a schedule deadline despite due diligence. An assumed lack of prejudice to the non-moving party has nothing to do with the moving party's exercise of diligence, and it does not show "good cause."

In passing, it must be noted that the situation highlighted here is precisely what the court's scheduling order was designed to avoid—a motion for summary judgment followed by a motion for leave to amend. In this case, the court has established a deadline for amending the pleadings before a deadline for filing dispositive motions, so that any parties electing to file dispositive motions might have some assurance that their efforts would not be nullified by changes in the pleadings, and so that the court would have some assurance that the case would proceed in an orderly and expeditious fashion. It is regrettable that the court must now deny the plaintiffs' request for leave to amend as untimely under the pretrial scheduling order.

*Leave to Amend Under Rule 15(a)*

Rule 15(a) permits the amendment of a pleading, with leave of court, after a responsive pleading has been served. The Rule further provides that "leave shall be freely given when justice so requires." Although amendments are usually allowed, C. Wright & A. Miller, *Federal Practice and Procedure* § 1474 (1971), the Rule is not free of limitations. "Among the acceptable justifications for denying leave to amend are undue delay, bad faith, dilatory motive,

repeated failure to cure deficiencies by prior amendment, undue prejudice to the opposing party, and futility of the amendment." *Jamieson By And Through Jamieson v. Shaw,* 772 F.2d 1205, 1208 (5th Cir.1985). Thus, decisions to deny leave have been upheld where the amendment would have been futile, *Wilson v. American Trans Air, Inc.,* 874 F.2d 386 (7th Cir.1989); *Williams v. U.S. Postal Service,* 873 F.2d 1069 (7th Cir.1989), where the proposed amendment would add new claims a short time before trial, *Campbell v. Ingersoll Mill. Mach. Co.,* 893 F.2d 925, 927 (7th Cir.1990); *Feldman v. Allegheny Int'l, Inc.,* 850 F.2d 1217, 1225–26 (7th Cir. 1988), and where the timing of the requested amendment would be prejudicial to defendants. *Samuels v. Wilder,* 871 F.2d 1346, 1351 (7th Cir.1989) ("not only did the plaintiffs not move to amend before defendants moved for summary judgment but ... the timing of raising [the] new issues was prejudicial to the defendants"); *Jones v. Hamelman,* 869 F.2d 1023, 1026–27 (7th Cir.1989) (extreme tardiness in attempting to amend complaint and resulting prejudice to defendants outweigh general policy behind Rule 15); *Ippolito v. WNS, Inc.,* 864 F.2d 440, 454–55 (7th Cir.1988) (no abuse of discretion found where defendant would not have had sufficient opportunity to respond to newly-raised issues).

In support of their motion, Amcast and EPC maintain that the defendants would not be prejudiced by the amendment of their complaint because discovery has been stayed and no trial date has been scheduled. In a number of cases, however, courts have denied leave to amend based upon a party's unexplained delay in seeking leave, or the untimeliness of a proposed amendment. Thus, in *Doelle v. Mountain States Tel. & Tel.,* 872 F.2d 942, 947 (10th Cir.1989), the court concluded that "[t]he district court did not abuse its discretion in refusing to permit the plaintiff to amend or supplement his complaint more than three months after the deadline in the court's scheduling order." *See Mills v. Des Arc Convalescent Home,* 872 F.2d 823, 826 (8th Cir.1989) (leave to amend properly denied where plaintiff offered no explanation for moving to amend complaint one and a half years after filing suit, two weeks after deadline for filing all motions or pleadings, and less than three weeks before trial); *First City Bank v. Air Capitol Aircraft Sales,* 820 F.2d 1127, 1133 (10th Cir.1987) ("undue delay" found to be a sufficient basis, in itself, for denying leave); *Logan Equipment Corp. v. Simon Aerials, Inc.,* 736 F.Supp. 1188, 1206–07 (D.Mass.1990) (leave to amend denied where plaintiff made no credible showing that delay in seeking amendment was justified, where most of the information included in the proposed amendment was known by plaintiff soon after filing original complaint, where leave was sought on eve of discovery deadline, and where allowing amendment would require postponement of action); *Triplett v. Electronic Data Systems (EDS),* 710 F.Supp. 667 (W.D.Mich. 1989) (leave denied where proposed amendment filed outside of the deadline established in prior scheduling order and where amendment would serve no useful purpose); *Plotkin v. Association of Eye Care Centers, Inc.,* 710 F.Supp. 156 (E.D.N.C. 1989); *Gianfriddo v. Western Union Telegraph Co.,* No. 84–3273–MA, slip op. (D.Mass. June 7, 1985) (LEXIS, Genfed library, Court's file).

In this case, the plaintiffs have offered no suitable explanation for their delay in moving to amend, nor have they provided an adequate reason for failing to request leave prior to the June 1, 1989 deadline. Although the plaintiffs' motion suggests that it was occasioned, in part, by an April, 1989 EPA study, that again does not explain why the plaintiffs waited until January 30, 1990, eight months after the deadline for amendments and more than six months after the Shareholder Defendants moved for summary judgment, to request leave. Moreover, it is clear that the plaintiffs could have raised their claim that the Former Shareholder defendants were "operators" of EPC's plant in their original complaint and, from all that has been shown, could have raised their claim for contribution prior to the June 1, 1989 deadline. Finally, the plaintiffs did not need to

amend their complaint in order to drop the Doe Defendants from their action. They could easily dismiss the Doe Defendants, at any time, under Fed.R.Civ.P. 41(a)(1). Since the Doe Defendants are unknown and have not appeared, the plaintiffs would not even need a court order; they could simply file a notice of dismissal.

Under very similar circumstances, the Seventh Circuit in *Kleinhans v. Lisle Sav. Profit Sharing Trust,* 810 F.2d 618, 625 (7th Cir.1987) observed that "[i]n view of Kleinhans' failure to adequately explain the unreasonable delay in moving to amend his complaint to state a claim for punitive damages when all of the information necessary to stating such a claim has been available to him for eighteen months, we agree with the judgment and reasoning of the district court that Kleinhans' motion 'represents an apparent attempt to avoid the effect of summary judgment [on his other claims].'" Like the court in *Kleinhans,* this court can only conclude, in the absence of a sufficient explanation for the plaintiffs' failure to seek leave prior to the June 1, 1989 deadline, that the proposed amendments are simply an attempt to avoid summary judgment. As the court stated in *Glesenkamp v. Nationwide Mutual Insurance Company,* 71 F.R.D. 1, 4 (1974), *aff'd without opinion,* 540 F.2d 458 (9th Cir. 1976),

> The liberal amendment policy of the Federal Rules was not intended to allow a party to circumvent the effects of summary judgment by amending the complaint every time a termination of the action threatens. The time must arrive in every case when the plaintiff must demonstrate that there is a genuine issue for trial or have summary judgment entered against him.

*See Kennedy v. Joseph Thal & Co. Inc.,* 814 F.2d 798, 806 (1st Cir.1987) (motion to amend seen as an attempt to avoid an adverse ruling on summary judgment); *Hutchinson v. Lausell,* 672 F.Supp. 43, 46 (D. Puerto Rico 1987) (motion for leave to amend could be viewed as an attempt to avoid an adverse ruling on motions to dismiss); *ACRI v. Intern. Ass'n of Mach. & Aerospace Wkrs.,* 595 F.Supp. 326, 334

(N.D.Cal.1983) (motion to amend viewed as an attempt to avoid the effects of summary judgment where plaintiff's counsel conceded that the legal basis for the proposed amendment was known to him at the time the complaint was filed and that the factual basis for the cause of action was also contained in the original complaint); *Colonial Bank v. Worms,* 550 F.Supp. 55 (S.D.N.Y. 1982); *Marshall v. Heringer Ranches, Inc.,* 466 F.Supp. 285 (E.D.Ca.1979). Under the circumstances presented here, the plaintiffs' motion for leave to amend must be denied under Rule 15(a), based upon their unexplained delay and the untimeliness of their motion.

Upon reconsideration, the court now VACATES its order of February 15, 1990 granting the plaintiffs leave to file an amended complaint. The plaintiffs' motion for leave to file an amended complaint is DENIED.

SO ORDERED.