**Walter S. CARNRITE, Plaintiff,**

v.

**GRANADA HOSPITAL GROUP, INC., Granada Computer Services (UK) Limited, Defendants.**

No. 95–CV–0478A.

United States District Court, W.D. New York.

Sept. 12, 1997.

Magistrate Judge Foschio filed a Report and Recommendation, recommending that defendants' motion for partial summary judgment dismissing the breach of contract claims be granted; defendants' motion for summary judgment on the issue of accord and satisfaction be denied; and plaintiff's cross-motion for summary judgment dismissing the affirmative defense of accord and satisfaction be denied. In the Report and Recommendation, Magistrate Judge Foschio also denied plaintiff's cross-motion to amend the complaint and granted defendants' motion to strike the affidavit of Paul J. Yesawich, III.[1]

On July 21, 1997, both plaintiff and defendants filed objections to the Report and Recommendation and on August 18, 1997, both parties filed responses thereto. Oral argument on the objections was held on September 12, 1997.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendation to which objections have been made regarding the Magistrate Judge's recommendation to deny summary judgment on defendants' accord and satisfaction affirmative defense. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions and hearing argument from the parties, the Court adopts the proposed findings of the Report and Recommendation.

Pursuant to 28 U.S.C. § 636(b)(1)(A), the district court "may reconsider any pretrial matter where it has been shown that the magistrate's order is clearly erroneous or contrary to law." *Id.* The Court has carefully reviewed the parties' objections and submissions regarding the Magistrate Judge's order denying plaintiff leave to amend, and having considered oral argument from counsel, the Court finds that Magistrate Judge Foschio's decision on this issue was neither clearly erroneous nor contrary to law.

Harris, Beach & Wilcox (Paul J. Yesawich, III, of counsel), Rochester, NY, for Plaintiff.

Haythe & Curley (Charles E. Dorkey, III, of counsel), New York City, Smith, Murphy & Schoepperle (Stephen P. Brooks, of counsel), Buffalo, NY, for Defendants.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio, pursuant to 28 U.S.C. § 636(b)(1), on August 15, 1995. On September 27, 1996, defendants filed a motion for partial summary judgment; on November 8, 1996, plaintiffs filed a cross-motion to amend the complaint; on March 24, 1997, defendants filed a motion for summary judgment dismissing plaintiff's breach of contract claims; on May 2, 1997, plaintiff filed a cross-motion for partial summary judgment dismissing the affirmative defense of accord and satisfaction; and on May 20, 1997, defendants filed a motion to strike plaintiff's counsel's affidavit in support of its motion for partial summary judgment. On June 2, 1997,

1. Plaintiff's cross-motion to amend the complaint and defendants' motion to strike the affidavit of Paul J. Yesawich, III are non-dispositive matters subject to Decision and Order by Magistrate Judge Foschio. However, for the purpose of simplification and because the issues were inter-related to the motions for summary judgment, Magistrate Judge Foschio incorporated his Decision and Order on those matters in his Report and Recommendation. *See* Report and Recommendation at 2, n. 1.

The Court finds that Magistrate Judge Foschio's twenty-six page Report and Recommendation was thorough, exhaustive and well-reasoned. Accordingly, for the reasons set forth in Magistrate Judge Foschio's Report and Recommendation, defendants' motion for partial summary judgment is granted; plaintiff's cross-motion to amend the complaint is denied; defendants' motion to strike the affidavit of Paul J. Yesawich, III is granted; defendants' motion for summary judgment on the issue of accord and satisfaction is denied; and plaintiff's cross-motion for summary judgment dismissing the affirmative defense of accord and satisfaction is denied.

Trial on this matter is set for Tuesday, December 16, 1997, at 9:30 a.m. A final pretrial conference is set for Thursday, December 11, 1997 at 4:00 p.m.

IT IS SO ORDERED.

## REPORT and RECOMMENDATION

UNITED STATES DISTRICT COURT WESTERN DISTRICT OF NEW YORK

WALTER S. CARNRITE, Plaintiff,

v.

GRANADA HOSPITAL GROUP, INC., and GRANADA COMPUTER SERVICES (UK) LIMITED, Defendants.

APPEARANCES:

HARRIS, BEACH & WILCOX
Attorneys for Plaintiff
PAUL J. YESAWICH, III, of Counsel
The Granite Building
130 East Main Street
Rochester, New York 14604

HAYTHE & CURLEY
Attorneys for Defendants
CHARLES E. DORKEY III, of Counsel
237 Park Avenue
New York, New York 10017

SMITH, MURPHY & SCHOEPPERLE
Attorneys for Defendants
STEPHEN P. BROOKS, of Counsel
786 Ellicott Square Building
Buffalo, New York 14203

## DECISION and ORDER

### 95–CV–0478A

### *JURISDICTION*

This matter was referred to the undersigned by the Hon. Richard J. Arcara on August 15, 1995 for a determination of any non-dispositive motions, and for report and recommendation on any dispositive motions. The matter is presently before the court on Defendants' motion for partial summary judgment, dated September 27, 1996; Plaintiff's cross-motion to amend the complaint, dated November 8, 1996; Defendant's motion for summary judgment dismissing Plaintiff's breach of contract claims, dated March 24, 1997; Plaintiff's cross-motion for partial summary judgment dismissing the affirmative defense of accord and satisfaction, dated May 2, 1997; and Defendant's motion to strike Plaintiff's counsel's affidavit in support of its motion for partial summary judgment, dated May 20, 1997.[1]

### *BACKGROUND*

Plaintiff, Walter S. Carnrite, filed a complaint on June 14, 1995 alleging a cause of action for breach of contract against both Defendants. Carnrite, formerly employed as a salesman by Defendant Granada Hospital Group, Inc. ("Granada"), alleges that both Defendants have refused to pay earned commissions owing to him pursuant to a written compensation plan. Defendants answered the complaint on July 30, 1995.

Thereafter, on November 3, 1995, Defendants filed a motion to transfer the action to the District Court for the District of Massachusetts. On December 15, 1995, Plaintiff filed a motion for a preliminary injunction and a temporary restraining order. The temporary restraining order was granted on December 20, 1995. On January 8, 1996, the parties stipulated to withdraw the motion for a preliminary injunction, and the temporary restraining order was vacated. On April 25,

---

1. Defendant's motion for partial summary judgment and Plaintiff's cross-motion for partial summary judgment are before the court for a Report and Recommendation on their disposition to Judge Arcara, while Plaintiff's cross-motion to amend the complaint and Defendant's motion to strike Plaintiff's counsel's affidavit are before the undersigned for a Decision and Order. However, because the subject matter of these motions is so inter-related, the court will address the motions together in one decision.

1996, Defendants motion to transfer the action was denied upon the condition that Plaintiff would reimburse the reasonable expenses of Defendants' non-employee Massachusetts based personnel who would be required to travel to New York for proceedings in this action.

On September 27, 1996, Defendants moved for partial summary judgment seeking a dismissal of Plaintiff's claims for attorneys' fees, costs, and liquidated damages under New York Labor Law § 198(1–a), with a supporting memorandum of law. In response, on November 8, 1996, Plaintiff filed a cross-motion to amend the complaint to add a claim under New York Labor Law § 191(1–c) against both Defendants, and a quantum meruit claim against Granada UK. Plaintiff also filed a memorandum of law in favor of the cross-motion and in opposition to Defendants' motion. Defendants filed a further memorandum of law on December 5, 1996, along with an attorney affirmation. Plaintiff filed another supporting memorandum of law on December 20, 1996.

On March 24, 1997, Defendants filed a motion for summary judgment seeking dismissal of Plaintiff's breach of contract claims, and a dismissal of the action against both Defendants. On May 2, 1997, Plaintiff filed a cross-motion for partial summary judgment seeking dismissal of Defendants' sixth affirmative defense of accord and satisfaction. In response, on May 20, 1997, Defendants filed a motion to strike the affidavit of Paul J. Yesawich, III, Plaintiff's counsel, a memorandum of law in support of the motion, and a second memorandum of law in further support of Defendants' motion for summary judgment and in opposition to Plaintiff's cross-motion for summary judgment.

For the reasons as set forth below, Defendants' motion for partial summary judgment should be GRANTED; Plaintiff's cross-motion to amend the complaint is DENIED; Defendants' motion for summary judgment should be DENIED; Defendant's motion to strike Plaintiff's counsel's affidavit is GRANTED; Plaintiff's cross-motion for partial summary judgment should be DENIED.

## FACTS

Plaintiff, at the time of the actions leading to the filing of this complaint, was a salesman for Granada. Granada, a Delaware corporation with its principal place of business located in Burlington, Massachusetts, is a subsidiary of Granada UK Limited, a United Kingdom corporation. Granada is comprised of three divisions: the hospital group, the commercial services group, and the operations group. Plaintiff was employed as a salesman for the hospital group, and, as such, entered into agreements with hospitals for the installation of televisions and related technologies.

In 1990, Glenn Kashgegian, then Vice President of the commercial services group, discussed with Plaintiff the possibility of Plaintiff selling for the commercial services group, as well as the hospital group. Thereafter, during the period from 1991–1992, Plaintiff continued to sell to hospitals while also looking at working with the commercial services group.

Effective September 1, 1992, Plaintiff became the Division Director of Commercial Sales for Granada. Plaintiff entered into a compensation agreement with Granada whereby Plaintiff was paid a base salary of $60,000 and was entitled to commissions at a rate of 7.5% for new contracts, and at a rate of either 2.5% on revenue or one-half of the first months revenue, whatever was greater, for renewals. Additionally, Plaintiff was entitled to a 5% commissions on "T & M" billing. Plaintiff's salary, including commissions, was capped at $225,000 per annum. Plaintiff continued to work for the hospital group, receiving commissions only for any sales with that group.

A new compensation agreement for Plaintiff was developed towards the end of 1993. The compensation agreement was similar to the 1992 agreement, except that it removed the salary cap and granted Granada the right to add or delete sales territories. It also provided a 5% commission on any new contracts that were for only a one year duration. The agreement also stated that the Granada Compensation Committee would approve all incentive payments, rule on any disputes, interpret the rules and intent of the compensation agreement, and would rule on any unusual conditions that could be considered a "windfall." Although the agreement did not define "windfall," the term was understood in

the industry to be a sale that the company would have obtained with or without the salesman's efforts, and is an attempt to limit a salesman's commission if he did not bring about the sale. Exhibit H, Deposition of James Pennington, dated August 8, 1996, at p. 31.

On February 14, 1994, Granada entered into an agreement with Electronic Data Systems, Inc. ("EDS") to provide EDS with maintenance services for the EDS Communications Strategic Business Unit in support of a contract which EDS had with Spectradyne, Inc. According to Plaintiff, the EDS agreement resulted from "years of effort" by Plaintiff. Complaint, at p. 10, ¶ 37. The starting date for the implementation of the EDS/Spectradyne agreement was April 1, 1994, and was for a term of ten years, subject to a cancellation option which could be exercised on six months notice.

According to the terms of the compensation agreement, Plaintiff was entitled to a commission of 7.5% of the first year's revenue on a multi-year contract, with 75% payable within forty-five days of the contract signing, and the balance to be paid within six months of the contract signing. According to Plaintiff, the revenues to be paid to Defendants by EDS exceeding $10,000,000, and, as such, the commission due to Plaintiff "should have approximated $900,000 or more." Affidavit of Walter S. Carnrite, Notice of Cross-Motion, dated May 2, 1997. On April 1, 1994, forty-five days after the execution of the EDS Agreement, Plaintiff contacted Glenn Kashgegian regarding payment of his commission. On July 6, 1994, Plaintiff wrote a memorandum to Kashgegian asking for payment of the commissions for the EDS Time and Material billings, also stating that "I fully realize it is too premature at this time to try and calculate the commission from the annual revenue of the service/maintenance agreement." Exhibit C, Plaintiff's Notice of Cross-Motion. On the same day, Kashgegian approved an advance of $30,000 against the EDS contract commission. Exhibit C. On July 21, 1994, Plaintiff sent a memorandum to Peter Wills, the president of Granada North America, requesting payment of $25,000 per month for the next six months as partial payment of the EDS commissions, again noting that it was "too premature today to fully analyze the EDS revenue impact." Exhibit D, Plaintiff's Notice of Cross-Motion. Wills referred Plaintiff to Kashgegian, and Plaintiff thereafter sent a similar memorandum to Kashgegian asking for a partial payment of his commission. Exhibit F, Plaintiff's Notice of Cross-Motion. When no action was taken, Plaintiff sent a further memorandum to Kashgegian asking for a resolution of the matter. Exhibit G, Plaintiff's Notice of Cross-Motion.

On September 7, 1994, Kashgegian informed Plaintiff that the Compensation Committee had determined that the EDS agreement was a "windfall," and therefore, the contract fell under the windfall category in the compensation agreement. As such, Plaintiff was told that the total commission for the EDS agreement would be $250,000, to be paid in monthly installments of $25,000 over a ten month period. A memorandum to that effect, dated September 7, 1994, was delivered to Plaintiff's home, via Federal Express, on September 28, 1994. According to Kashgegian, he did not author the memorandum, rather, he was informed that the memorandum was going to Plaintiff with Kashgegian's signature. Exhibit F, Notice of Cross-Motion, Kashgegian Deposition, at pp. 150-52. Plaintiff, by memorandum dated October 3, 1994, disputed the characterization of the EDS contract as a windfall, again asking for payment of $25,000 per month until the anniversary date of the EDS agreement, at which time the commission could be calculated on actual numbers. Nonetheless, by letter dated October 13, 1994, Kashgegian, again at his superior's direction, advised Plaintiff that the amount of $250,000, as outlined in the September 7, 1994 memorandum, would constitute "full and complete compensation for [his] participation in securing the EDS Spectravision account." Kashgegian Deposition, at p. 159.

Thereafter, Granada paid Plaintiff the balance of the $250,000 in monthly increments of $25,000. Plaintiff accepted the checks and cashed them. However, when the $250,000 was paid, and Granada failed to further compensate Plaintiff, Plaintiff filed this action.

### DISCUSSION

1. *Motion for Partial Summary Judgment/Cross-Motion to Amend the Complaint*

■ Defendants seek partial summary judgment dismissing Plaintiff's claim under New York Labor Law § 198(1–a) for attorneys' fees, costs, and liquidated damages on the ground that Plaintiff has not alleged a substantive violation of New York Labor Law § 190 *et seq.*, and that the time for amending the complaint has expired. In response, Plaintiff is seeking to amend the complaint to plead a substantive violation under Labor Law § 190, arguing that Defendants have had notice that Plaintiff was alleging a Labor Law violation, and that Defendants will not be prejudiced by the amendment as the proposed amended complaint does not allege additional facts and discovery has not yet been completed.

Plaintiff does not dispute that simply claiming an entitlement to attorney's fees, costs, and liquidated damages based on a compensation agreement, pursuant to New York Labor Law § 198(1–a), is insufficient under New York law. In *Gottlieb v. Kenneth D. Laub & Company, Inc.*, 82 N.Y.2d 457, 605 N.Y.S.2d 213, 626 N.E.2d 29 (1993), the New York Court of Appeals expressly held that "the statutory remedy of an award of attorneys' fees to a prevailing employee, as well as the liquidated damages remedy where a willful failure to pay wages has been established, are limited to actions for wage claims founded on the substantive provisions of Labor Law Article 6." *Gottlieb, supra*, at 33. In *Gottlieb*, similar to this case, the plaintiff, seeking unpaid commissions, filed an action alleging a common-law contract cause of action and a second cause of action for a "violation of Labor Law § 198," *Gottlieb, supra*, at 31. The Court of Appeals, finding that the plaintiff had failed to plead a substantive cause of action under Labor Law Article 6, reversed the Appellate Division's holding that Labor Law § 198(1–a) permitted a recovery of attorney's fees on a common-law contractual remuneration claim, and dismissed the plaintiff's § 198(1–a) claim in its entirety. *Gottlieb, supra*, at 34.

In this case, Plaintiff filed his complaint alleging two common-law causes of action for breach of contract seeking unpaid commissions, along with an allegation that he was entitled to attorney's fees, costs, and liquidated damages under § 198(1–a). Specifical-

ly, Paragraph 15 of the Complaint states that:

> in addition to the commissions described above, pursuant to New York Labor Law § 198.1–a, plaintiff is entitled to recover reasonable attorneys' fees and costs incurred in this action.

Complaint, at ¶ 15.

Paragraph 16 states that:

> [m]oreover, pursuant to New York Labor Law § 198.1–a, if defendant's refusal to pay commissions was "willful," plaintiff is entitled to 'an additional amount as liquidated damages equal to twenty-five percent of the total amount of wages found to be due.'

Complaint, at ¶ 16.

In Paragraphs 65 and 71 of the Complaint, setting forth the relief requested on the breach of contract claims, along with Paragraph 4 of the "Request for Relief," Plaintiff reiterates that he is seeking reasonable attorneys' fees, costs, and liquidated damages pursuant to New York Labor Law § 198(1–a). However, nowhere in the complaint does Plaintiff set forth facts alleging a substantive violation of New York Labor Law § 190. As such, following the holding in *Gottlieb*, as the Complaint does not allege a substantive violation of Labor Law Article 6, the court finds that Defendants' are entitled to partial summary judgment dismissing Plaintiff's claim under Labor Law § 198(1–a).

■ Recognizing this inevitability, Plaintiff now seeks to amend the Complaint to allege a violation of New York Labor Law § 191(1–c) against both Defendants. Defendants, as noted, contend that such an amendment is untimely, and, in any event, that the additional commissions which Plaintiff seeks are not wages under the New York Labor Law, so that such an amendment would be futile.

The initial scheduling order in this case was entered on November 1, 1995. According to that order, the deadline for filing motions to amend the pleadings was November 30, 1995. An order amending the first scheduling order was entered on January 19, 1996, changing only the dates upon which the parties were required to identify any expert

witnesses. Three additional scheduling orders were entered, on February 13, 1996, April 15, 1996, and May 10, 1996, ultimately changing the discovery deadline to October 31, 1996, and directing that any dispositive motions be filed by December 9, 1996. However, none of the amended scheduling orders changed the deadline for filing motions to amend the pleadings, and counsel did not request any extension of time to file amended pleadings.

On September 5, 1996, Plaintiff's counsel forwarded a copy of the proposed amended complaint to counsel for Defendants and requested that Defendants stipulate to the filing of the proposed amended complaint. Defendants refused to so stipulate. Three weeks after receiving the proposed amended complaint, Defendants filed their motion for partial summary judgment to dismiss any claim under New York Labor Law § 198(1–a). Plaintiff's cross-motion to amend the complaint followed.

 Plaintiff, while addressing Fed. R.Civ.P. 16 as to timeliness, asks that the court allow the amendment of the complaint in the interest of justice, pursuant to Fed. R.Civ.P. 15(a). Under Rule 15(a), leave to amend a complaint should be freely given. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). However, "[o]nce the district court [has] filed a pretrial scheduling order pursuant to Fed.R.Civ.P. 16 which establish[es] a time table for amending pleadings that rule's standards control." *Tschantz v. McCann*, 160 F.R.D. 568, 571 (N.D.Ind.1995) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (9th Cir.1992)). Thus, a plaintiff's ability to amend a complaint is governed by Rule 16(b), not 15(a). *Johnson, supra*, at 608.

Rule 16(b) provides that:

[The district court] ... shall, after receiving the report from the parties under Rule 26(f) ... enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings ...

The order shall issue as soon as practicable but in any event within 90 days after the appearance of a defendant and within 120 days after the complaint has been served on a defendant. *A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by the Local Rule, by a magistrate judge.*

Fed.R.Civ.P. 16(b) (emphasis added).

Therefore, according to the rule, a party seeking to amend a pleading after the date specified in a scheduling order must first show "good cause" for the amendment under Rule 16(b); then, if good cause can be shown, the party must demonstrate that the amendment is proper under Rule 15(a). *Tschantz, supra*, at 571. "Good cause" means that scheduling deadlines cannot be met despite a party's diligence. 6A Wright, Miller and Kane, Federal Practice and Procedure § 1522.1 at 231 (2nd ed.1990). "In other words, to demonstrate "good cause" a party must show that despite their diligence the time table could not have reasonably been met." *Tschantz, supra*, at 571. *See also Robinson v. Town of Colonie*, 1993 WL 191166 at *3 (N.D.N.Y.1993) ("[f]or purposes of Rule 16, a showing of 'good cause' requires 'the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" (quoting *Mayes v. Local 106, Int'l Union of Operating Eng'rs*, 1992 WL 335964 at *9 (N.D.N.Y.1992)). "Moreover, while the absence of prejudice to a non-moving party may be relevant in determining whether leave to amend should be granted under Rule 15(a), it does not fulfill the "good cause" requirement of Rule 16(b)." *Amcast Indus. Corp. v. Detrex Corp.*, 132 F.R.D. 213, 218 (N.D.Ind.1990).

This action was filed on June 14, 1995. During preliminary settlement discussions in October, 1995, defense counsel advised Plaintiff's counsel that any offer of settlement would not include any amount for legal fees as Defendants did not believe that Plaintiff was entitled to such relief. Affirmation in Further Support of Defendants' Motion for Partial Summary Judgment, at p. 2, ¶ 3. On October 25, 1995, counsel attended a preliminary pretrial conference with the court for the purposes of entering into a scheduling order. Representing to the court that the parties wished to move the case along, counsel agreed that "all motions to join other parties and to amend the pleadings shall be

filed on or before November 30, 1995." Scheduling Order, dated November 1, 1995, at ¶ 1. That date passed with no motions filed, nor any request to extend the date. At a second pretrial conference on January 17, 1996, Plaintiff's counsel indicated that he was considering filing an amended complaint. The court advised Plaintiff's counsel that the deadline for filing amended pleadings had passed. Plaintiff's counsel stated that he would decide whether the complaint should be amended and move accordingly. In September, 1996, Plaintiff's counsel sent the amended complaint to defense counsel asking them to stipulate to the amendment. As noted, defense counsel refused to do so, and Plaintiff proceeded to file the instant motion to amend. At no time did Plaintiff move to extend the dates in the scheduling order as related to the filing of amended pleadings.

In support of his claim that good cause exists for modifying the scheduling order deadline for the amendment of the pleadings, Plaintiff argues that the missing of the deadline was "excusable neglect," which encompasses inadvertence, mistake or carelessness. Plaintiff asserts that, through inadvertence, he "did not articulate fully a discrete claim under Labor Law § 191(1-c), which is necessary to recover damages under § 198(1-a)." Plaintiff's Reply Memorandum of Law, at p. 6. Immediately upon realizing this error, Plaintiff notified Defendants of his intention to amend the Complaint to more properly state a claim under the New York Labor Law. Similarly, Plaintiff seeks to assert a claim for quantum meruit against Granada UK which he also states he inadvertently failed to assert in the original complaint. Plaintiff contends that no new facts are alleged in support of either claim, and that the quantum meruit amendment merely clarifies the Complaint, adding only a legal theory of recovery. Plaintiff argues that the cases cited by Defendants in opposition to Plaintiff's motion are inapposite because they do not apply to a motion to amend that does not assert any new facts. Finally, Plaintiff states that Defendants will not be prejudiced by the amendment, and the case will not be delayed any further.

The court agrees that Defendants would not be prejudiced by the filing of the proposed amended complaint as Defendants are well aware of the facts in the case as originally pled by Plaintiff, although the court notes that the filing of an amended complaint in response to a valid summary judgment motion could be considered prejudicial. If the court could consider Plaintiff's motion under the standards of Rule 15(a) alone, the court would most likely grant Plaintiff's motion. *See Foman v. Davis, supra,* at 182, 83 S.Ct. at 230 (leave to amend a complaint should be freely given). However, as the deadline for the filing of amended pleadings has passed, the court must first consider Plaintiff's motion under the standards of Rule 16(b). In contrast, under these standards, the court finds that Plaintiff's motion must fail.

Plaintiff has not stated any good cause for his failure to timely file the motion to amend the complaint. The legal theory in *Gottlieb* as to the proper manner in which to allege a claim under New York Labor Law § 198(1-a) was articulated in November, 1993. However, in filing the complaint in June, 1995, Plaintiff failed to properly allege the Labor Law claim. At least as early as October, 1995, Defendants placed Plaintiff on notice that they did not believe that Plaintiff had a viable claim for attorney's fees. Nonetheless, Plaintiff agreed to an expedited schedule as to the deadline for filing amended pleadings, and did not so move before the deadline. Representing to the court in January, 1996 that he might want to amend the complaint, the court indicated to Plaintiff's counsel that the time for filing amended pleadings had passed. Nonetheless, Plaintiff, stating that he was still considering filing an amended complaint, made no effort to modify the existing scheduling order, even though the scheduling order was extended three different times after the date of the court meeting, at the parties' requests, to change the deadlines for the completion of discovery and disclosure of expert witnesses. Finally, after Defendants refused to stipulate to the filing of an amended complaint in September, 1996, ten months after the deadline for the filing of amended pleadings, Plaintiff still failed to file a motion to amend the scheduling order, simply filing a motion to amend the complaint with no attempt to show any reason why the motion was not timely filed. Not until Defendants raised the argument that the motion was untimely did

Plaintiff attempt to set forth reasons for his failure to timely file the motion. Even so, Plaintiff's arguments center around the lack of prejudice to Defendants, the lack of delay in the proceedings, while at the same time conceding that the motion was untimely, but that it was only the result of inadvertence on the part of Plaintiff's counsel.

■ Despite Plaintiff's arguments to the contrary, attorney inadvertence does not constitute good cause. *Delicata v. Bowen*, 116 F.R.D. 564, 566 (S.D.N.Y.1987) (in context of failure to timely serve the complaint under Fed.R.Civ.P. 4). Plaintiff contends that the Second Circuit, in the case of *LoSacco v. City of Middletown*, 71 F.3d 88, 93 (2d Cir.1995), applied the standard of "excusable neglect" to Fed.R.Civ.P. 6(b) time issues, and that this standard should be applied here. Specifically, in that case, a pro se litigant untimely filed his bill of costs. The litigant was allowed to file his bill of costs, with the court holding that the failure to timely file the bill of costs within the time allotted in Rule 6(b) was excusable neglect. Plaintiff then states that "the definition of 'excusable neglect' applicable to Fed.R.Civ.P. 6(b) is equally applicable to Fed.R.Civ.P. 16(b)." Plaintiff's Reply Memorandum, at p. 6 n. 3. Plaintiff has not cited, nor has the court's research revealed, any authority for this proposition. In any event, statutory time periods for filing appeals and bills of cost, etc., are not the same as scheduling deadlines mandated by Fed.R.Civ.P. 16(b). As such, the court finds that Plaintiff's counsel's "inadvertence" or oversight is not good cause for purposes of Rule 16(b). Strict enforcement of the good cause requirement of Rule 16 may seem like unnecessarily strong medicine. But if the courts do not take seriously their own scheduling orders who will? This court cannot in good conscience ignore the clear authority applying the good cause requirement, particularly in a case, as here, where the party requesting relief offers no even facially persuasive reason to do so. Failure to enforce Rule 16 would tend to subvert the important case management policy upon which the rule was based and undermine the court's ability to maintain compliance with its case management orders.

Accordingly, Plaintiff's cross-motion to amend the complaint must be DENIED.

### 2. *Defendants' Motion for Summary Judgment/Plaintiff's Cross–Motion for Partial Summary Judgment*

### (A) Defendant's Motion to Strike the Affidavit of Paul J. Yesawich, III

In support of his cross-motion for partial summary judgment dismissing Defendants' accord and satisfaction defense, Plaintiff filed a memorandum of law in support of his motion, a statement of undisputed facts, and an affidavit from Paul J. Yesawich, III, Plaintiff's counsel ("Yesawich Affidavit"). In response, Defendants filed a motion to strike the Yesawich Affidavit in its entirety, or, alternatively, to strike certain portions of the affidavit on the ground that the affidavit does not set forth evidence, but, rather is "nothing more than duplication of its memorandum of law," which Plaintiff is seeking to "transform into factual evidence." Defendants' Memorandum of Law in Support of its Motion to Strike, at p. 2.

■ Pursuant to Fed.R.Civ.P. 56(e), to be considered on a motion for summary judgment, an affidavit must be sworn upon personal knowledge, must state facts admissible in evidence at the time of trial, and must be offered by a competent affiant. Fed.R.Civ.P. 56(e). *See also DeCintio v. Westchester County Medical Center*, 821 F.2d 111, 114 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 455, 98 L.Ed.2d 395 (1987). In ruling on a motion for summary judgment, a court should not consider affidavits that fail to satisfy these prerequisites. *See Aucutt v. Six Flags Over Mid–America, Inc.*, 85 F.3d 1311, 1317 (8th Cir.1996). Rule 56(e) defects are waived, however, where a non-movant fails to bring a motion to strike the affidavit. *DeCintio, supra*, at 114; *In re Teltronics Services, Inc.*, 762 F.2d 185, 192 (2d Cir. 1985). As Defendants have, in this case, filed a motion to strike, any alleged defect in the Yesawich Affidavit is not waived.

■ In his affidavit, Mr. Yesawich states that he is "fully familiar with the facts and circumstances of this case." Yesawich Affidavit, at ¶ 1. The remaining paragraphs discuss whether the EDS Agreement was properly declared a "windfall," ¶ 2, an allegation of fraud against Defendants regarding the Defendants' affirmative defense of accord

and satisfaction, ¶¶ 2–3, reiteration of deposition testimony, ¶¶ 3–4, and a statement of certain disputed facts, along with an argument of the facts in the case, ¶¶ 5–15. There is no indication that the facts which Mr. Yesawich discusses were within Mr. Yesawich's personal knowledge.

■ An attorney's affidavit not based on personal knowledge is an impermissible substitute for the personal knowledge of a party. *United States v. Bosurgi,* 530 F.2d 1105, 1111 (2d Cir.1976). An affidavit based on hearsay from counsel, unsupported by other competent proof, "does not comply with Rule 56(e)." *Mason Tenders District Council Pension Fund v. Messera,* 958 F.Supp. 869, 891–92 (S.D.N.Y.1997). *See also Sellers v. MC Floor Crafters,* 842 F.2d 639, 643 (2d Cir.1988) ("a hearsay affidavit is not a substitute for the personal knowledge of a party").

After a review of the Yesawich Affidavit, the court finds that the Yesawich Affidavit does not meet the prerequisites of Rule 56(e). Defendants' motion to strike the Yesawich Affidavit is GRANTED. In deciding Plaintiff's cross-motion, the court will consider the supporting affidavit of Plaintiff, Walter S. Carnrite, as such affidavit meets the prerequisites of Rule 56(e).

## (B) Summary Judgment

■ Summary judgment will be granted pursuant to Fed.R.Civ.P. 56 when the moving party demonstrates that there are no genuine issues as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991). The party moving for summary judgment bears the burden of establishing the nonexistence of a genuine issue of material fact. If there is any evidence in the record based upon any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party cannot obtain summary judgment. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985).

The function of a district court in considering a summary judgment motion is not to resolve disputed issues of fact, but to determine whether there is a genuine issue to be tried. *Rattner, supra,* at 209. In assessing the record, including any affidavits, exhibits, and other submissions, the court is required to resolve all ambiguities and to draw all factual inferences in favor of the nonmoving party. *Anderson, supra,* at 255, 106 S.Ct. at 2513–14; *Rattner, supra,* at 209.

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

Defendants have filed a motion for summary judgment dismissing the entire action on the ground that Plaintiff's claims are barred by an accord and satisfaction. Specifically, Defendants claim that, after they informed Plaintiff that they would pay him $250,000 in ten equal increments of $25,000 in "full and complete compensation" for his efforts, Plaintiff accepted the payments and cashed the checks without protest, only commencing this action after he had been paid the full $250,000. Plaintiff contends that he asked Defendants to remit $25,000 per month to him as an advance on the final compensation owed under the EDS contract, as the commission could not have been computed prior to the completion of the first year of the contract, and that his acceptance of the $25,000 partial payments did not constitute an accord and satisfaction of the underlying debt.

■ Under New York law, an accord and satisfaction is the resolution of a disputed, unliquidated claim through a new contract "discharging all or part of [the parties'] obligations under the original contract," and constitutes a complete defense to a claim for breach of contract.[2] *Conboy, McKay, Bachman & Kendall v. Armstrong,* 110 A.D.2d 1042, 488 N.Y.S.2d 901, 902 (4th Dep't.1985) (quoting *Merrill Lynch Realty/Carll Burr*

---

**2.** This court, in its Decision and Order, dated April 25, 1996, denying Defendants' motion to transfer the action to the District of Massachu-

setts, determined that New York law applied to this contract dispute.

*Inc. v. Skinner,* 63 N.Y.2d 590, 483 N.Y.S.2d 979, 473 N.E.2d 229 (1984)). An agreement to settle a disputed claim constitutes an accord; execution of the agreement is satisfaction. *New York Protective Covering Industries, Inc. v. Stevens Technical Services, Inc.,* 1997 WL 104767 at *2 (E.D.N.Y.1997) (citing 19 N.Y.Jur.2d Compromise, Accord and Release § 1). An accord and satisfaction cannot be reached absent "an expression of intent by the parties to discharge the old obligation when the new one has been performed." *S. Leo Harmonay v. Binks Mfg. Co.,* 597 F.Supp. 1014, 1028 (S.D.N.Y.1984), *aff'd,* 762 F.2d 990 (2d Cir.1985).

In *Manley v. Pandick Press, Inc.,* 72 A.D.2d 452, 424 N.Y.S.2d 902 (1st Dep't. 1980), a terminated salesman brought an action against his former employer asserting a number of claims, including breach of contract for failure to pay commissions. In *Manley,* following the plaintiff's termination, the defendant employer initially sent plaintiff interim statements and checks for salary and commissions earned by plaintiff. Approximately four months later, the employer notified the plaintiff that he would not be paid any further commissions because of losses incurred by the employer as a result of price adjustments issued by plaintiff on certain of his jobs. The plaintiff told the employer that he was entitled to the commissions, and requested further information on the price adjustments. The employer provided the detail on the price adjustments, and then subsequently sent the plaintiff a check for a commission on two jobs unrelated to the dispute, stating that "the attached check represents final settlement of all compensation due to you from your term of employment." *Manley, supra,* at 904–05. The plaintiff cashed the check without protest. The Appellate Division, affirming a denial of summary judgment on the contract causes of action, found that the exchange of correspondence and the subsequent cashing of the check by the plaintiff did not support a finding of accord and satisfaction as a matter of law. The court held that first, the cashing of a check unrelated to the dispute could not constitute an accord and satisfaction of the disputed claim. Second, noting that for accord and satisfaction to apply, "the debtor must make it clear that the check which is sent is offered only on condition that it is taken in full payment of the disputed claim," *Manley, supra,* at 905 (citing 15 Williston on· Contracts (3d ed.) § 1856, at p. 555), the court found that it was not made clear to the plaintiff that the check was being sent to him in full satisfaction of the dispute. Third, the court observed that there was such a gross disparity between the amount of the check sent to the plaintiff and the amount of the disputed commission that a finding of accord and satisfaction could not be made. *Manley, supra,* at 905.

In this case, in order to establish accord and satisfaction, Defendants are required to show that there was a dispute between Plaintiff and Defendants as to the amount of commissions due Plaintiff, and that Plaintiff "knowingly accepted a lesser amount in satisfaction of that dispute." *New York Protective Covering Industries, Inc., supra,* at *2. Defendants argue that they informed Plaintiff that the entire commission on the EDS Agreement would be $250,000, paid in ten equal increments of $25,000 each, commencing on September 1, 1994, and that payment of $250,000 would constitute "full and complete compensation for [Plaintiff's] participation in securing the EDS Spectravision account," Exhibit H and Exhibit J, Notice of Cross–Motion, dated May 2, 1997, and that, although Plaintiff disputed the calculation of the commission, Plaintiff accepted and cashed each $25,000 check without protest. Plaintiff contends, however, that he had initially proposed that Defendants make a partial payment of the commission due him in the amount of $25,000 per month, until the full commission could be accurately calculated, and that only upon receipt of the September 7, 1994 memorandum from Kashgegian, outlining Defendants' position as to the commission due on the EDS Agreement, was he informed that there was any dispute as to his commission. Plaintiff vehemently disputed Defendants' position, sending a memorandum to Kashgegian, dated October 3, 1994, stating that he did not agree with the compensation committee's decision, and again reiterated his position that:

> The alternative I felt that was fair and equitable was to pay me $25,000/month

**451**

until the anniversary date of the agreement, at that time we would be in better position to calculate the actual commission. Exhibit I, Notice of Cross–Motion, dated May 2, 1997.

In the same memorandum, Plaintiff stated that "If Granada is not going to abide by my request, and this is their final decision, please indicate same by registered mail." Exhibit I. On October 13, 1994, Kashgegian, on behalf of Defendants, corresponded with Plaintiff, stating that "[i]t is therefore Granada's final decision that the compensation arrangements outlined in my letter to you on September 7, 1994 constitutes full and complete compensation for your participation in securing the EDS Spectravision account." Exhibit J. Defendants continued to send Plaintiff $25,000 per month, checks which Plaintiff accepted and cashed without formal protest.

■ "Acceptance of a check will operate as an accord and satisfaction only when the person receiving the check has been clearly informed that acceptance of the amount offered will settle or discharge the claim." *Conboy, supra,* at 902 (citing *Merrill Lynch, supra,* at 232). On the record before the court, while it is clear that Defendants informed Plaintiff that they considered $250,000 to be the full amount of commission due Plaintiff on the EDS Agreement, there is no indication whether Plaintiff was informed that the $25,000 checks being sent to Plaintiff constituted payment of the full commission as opposed to the partial payment plan sought by Plaintiff, and that Plaintiff accepted them with this understanding.

For example, Defendants do not proffer as evidence any checks which show an endorsement indicating that the checks were tendered in full satisfaction of Plaintiff's claim for commissions. Significantly, Granada, after initially paying Plaintiff $30,000 as an advance on the commission from the EDS deal without stating that such commission would be subject to the windfall clause of his compensation agreement, advised Plaintiff, on September 7, 1994 that the EDS commission was indeed subject to the windfall clause and that Plaintiff would receive $250,000 as full compensation for the EDS deal, without

informing Plaintiff that the $250,000 was in fact being offered in settlement of Plaintiff's approximately $900,000 claim. Granada's statement, on October 13, 1994, that the $250,000 would constitute full and complete compensation for the EDS deal could be construed to have served as notice to Plaintiff that the amount of the debt owed to Plaintiff, *i.e.,* his commission, was in dispute, as opposed to an offer by Granada to resolve the amount of the commissions owed. As such, Plaintiff's acceptance of the $25,000 monthly checks could either be construed as Plaintiff's acceptance of a partial payment on the amount of commission owed to Plaintiff, or as satisfaction of the debt owed to Plaintiff. The court notes that at no time did Defendants expressly state that it was offering $250,000 in full settlement of a disputed debt with Plaintiff, rather, Defendants only stated that it was willing to pay $250,000. On this record, a reasonable juror could find that no offer of an accord was made nor was an accord accepted by Plaintiff, and therefore Plaintiff's subsequent cashing of the checks could not have constituted satisfaction. Thus, whether by cashing the checks alone, Plaintiff intended to enter into an accord and satisfaction with Defendants as to the disputed commission amount is a question for the trier of fact.

■ Summary judgment is inappropriate where the intent of the parties is unclear. *New York Protective Covering Industries, Inc.,* at *3. The issue of intent necessary for a finding of accord and satisfaction, absent unequivocal language in the record, is a matter for the trier of fact. *Manley, supra,* at 905. The court is unable to conclude, on this record, that, at the time the $25,000 checks to Plaintiff were issued, that the Plaintiff knowingly accepted the lesser amount in satisfaction of the commission dispute. As such, a genuine issue of material fact remains, and summary judgment may not be granted to either Plaintiff or Defendants on the issue of accord and satisfaction.

### CONCLUSION

Based on the foregoing, Defendants' motion for partial summary judgment should be GRANTED; Plaintiff's cross-motion to

amend the complaint is DENIED; Defendants' motion to strike the affidavit of Paul J. Yesawich, III is GRANTED; Defendants' motion for summary judgment on the issue of accord and satisfaction should be DENIED; and Plaintiffs' cross-motion for summary judgment dismissing the affirmative defense of accord and satisfaction should also be DENIED.

Respectfully submitted,

/s/ Leslie G. Foschio

United States Magistrate Judge

Dated June 2, 1997

Buffalo, New York